CONSUMERS' RESEARCH, INC., PROSECUTOR, v. ALICE B. EVANS AND BOARD REVIEW (NEW JERSEY UNEMPLOYMENT COMPENSATION COMMISSION), RESPONDENTS.

Submitted October 7, 1941—Decided February 13, 1942.

Before Justices BODINE, PERSKIE and PORTER.

For the prosecutor, *Waugh, Torppey & Consodine* (*William A. Consodine,* of counsel).

For the respondents, *Clarence F. McGovern.*

The opinion of the court was delivered by

PORTER, J. This writ of *certiorari* brings before us for review the determination of the Board of Review of the Unemployment Compensation Commission holding that an employee of Consumers' Research, Inc., prosecutor, Alice B. Evans, is eligible for benefits under *N. J. S. A.* 43:21, *et seq.*

The sole question presented is whether or not prosecutor comes within the provisions of the statute, *N. J. S. A.* 43:21-19 (i-7) exempting an employer engaged exclusively for scientific or educational purposes and whose net earnings do not inure to the benefit of any private shareholder or individual. The statute reads as follows:

"The term 'employment' shall not include: * * * (G) Services performed in the employ of a corporation, com-

munity chest fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, hospital, benevolent, philanthropic, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual."

The Consumers' Research, Inc., is incorporated under the laws of this state not for pecuniary profit. It holds itself out as being organized to provide a clearing house where information of importance to consumers may be assembled, edited and promulgated; and "to develop an art and science of consumption by use of which ultimate consumers may defend themselves against the invasions and aggressions of misleading advertising and high pressure salesmanship." It purchases in the open market articles of general use by consumers such as household utensils, toilet articles, food, drugs, wearing apparel, radios, vacuum cleaners, &c., and subjects them to scientific and economic tests and research as to their nature, adaptability, serviceableness, quality, &c. The result of this research is made known to its patrons or subscribers who pay an annual fee for this service. The prosecutor has about 60,000 subscribers to its service. The prosecutor recruits its subscribers through the circulation by mail of a prospectus and it publishes bulletins annually and nine monthly during the year. It also published a monthly magazine known as "Consumers Digest" but which was later published by a separate corporation controlled, however, by prosecutor and having interlocking directors and its offices at the same location. This publication did not confine itself to scientific subjects or to the work of the prosecutors but in addition printed articles of more general interest to the public. We are informed that since the hearings in this matter it has ceased publication.

The actual membership in the prosecutor corporation is limited to five members. Its founder and now full time director together with a staff of assistants and office help, in all about twenty, are paid stated salaries for their services. The director has made contributions to the corporation especially in its formative period and a substantial gift of

$10,000 was donated by an individual well wisher. Otherwise it is supported by the subscriptions received. The enterprise has been successful and prosperous. Its balance sheet as of September 30th, 1939, shows that it has assets of $93,893.82 after setting up an item of $25,180.28 as a reserve for depreciation; its current liabilities of accounts payable and accrued taxes are shown to be $9,004.23 and charging as a liability as unearned income $64,206.17 received from subscribers for service to be rendered, leaves a surplus of $20,683.42 made up of excess of income over expenses and depreciation. From its earnings it has acquired a rather extensive and complete plant for offices and for its various tests and experimental work. Its profits may not be distributed among its members but may be used, as has been done, for the acquisition of needed plant facilities and improvements therein. Salaries now paid do not seem at all excessive but the corporation is not limited in what it may pay. It may well be that profits will accumulate beyond the needs of the corporation for equipment or salaries commensurate with services rendered. No provision is made in the corporate organization for such a contingency. In the event of dissolution of the corporation the assets would be divided among the five members. It seems to us therefore that it cannot be said that the prosecutor comes within the exemption because its net earnings do not and cannot "inure to the benefit of any private shareholder or individual."

Moreover it does not seem to us that the prosecutor is engaged *exclusively* in scientific and educational work as contemplated by the words of the statute. Its charter does not so limit it. It is not enough that the work be scientific and educational, as doubtless in a broad sense this work was, but it must be devoted exclusively to such objects. The facts here sustain the conclusion below that the work was not exclusively scientific and educational.

The expressed legislative purpose of the Unemployment Compensation Law is beneficent. It declares the public policy to be the economic security of the unemployed worker and sets up methods to accomplish that desired end. There should be a liberality of construction for the purpose of carrying out

the legislative intent. Exemption should only be allowed where the right to it is clear and unequivocal. Compare *Shore Fishery, Inc., v. Board of Review of New Jersey Unemployment Compensation Commission et al.,* 127 *N. J. L.* 87.

The judgment under review will be affirmed and the writ dismissed, with costs.