## BETTER ·BUSINESS BUREAU OF WASH-INGTON, D. C., Inc., v. UNITED STATES.

### No. 8765.

United States Court of Appeals
District of Columbia.

Argued Jan. 19, 1945.

Decided Feb. 19, 1945.

Writ of Certiorari Granted April 30, 1945.
See 65 S.Ct. 1088.

Mr. Rutherford B. H. ·Lyon, of Washington, D. C., with whom Mr. Simon Lyon, of Washington, D. C., was on the brief, for appellant.

Mr. Fred J. Neuland, Sp. Asst. to the Atty. Gen., with whom Messrs. Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Robert N. Anderson, Sp. Assts. to the Atty. Gen., Edward M. Curran, U. S. Atty., and Daniel B. Maher, Asst. U. S. Atty., both of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and MILLER and ARNOLD, Associate Justices.

ARNOLD, Associate Justice.

The sole question involved in this appeal is whether Better Business Bureau of· Washington, D. C., Inc., is exempt from social security taxes as a corporation organized and operated exclusively for educational or scientific purposes within the meaning of the Social Security Act.[1] Better Business Bureau is a nonprofit organization whose members are business and professional men of high standing. Its funds come exclusively from membership fees and contributions. The Articles of Incorporation describe its purposes as follows:

"* * * the object for which it is formed is for the mutual welfare, protection and improvement of business methods among merchants and other persons engaged. in any and all business or professions and occupations of every description whatsoever that deal directly or indirectly with the public at large, and for the educational and scientific advancements of business methods among persons, corporations or associations engaged in business in the District of Columbia so that

---

[1] 49 Stat. 639 (1935), 42 U.S.C.A. § 1011(b): "The term 'employment' means any service, of whatever nature, performed within the United States by an employee for his employer, except— * * * (8) Service performed in the employ of a corporation, community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual."

the public can obtain a proper, clean, honest and fair treatment in its dealings or transactions with such merchants, tradesmen, corporations, associations or persons following a profession and at the same time protecting the interest of the latter classes of businesses to enable such as are engaged in the same to successfully and profitably conduct their business and for the further purpose of endeavoring to obtain the proper, just, fair and effective enforcement of the Act of Congress approved May 29th, 1916, otherwise known as 'An Act to prevent fraudulent advertising in the District of Columbia'."

In carrying out these charter purposes the Bureau's work is divided into five subdivisions: (1) the prevention of business fraud; (2) the fighting of fraud; (3) the elevation of business standards by education; (4) the education of the consumer as a buyer; and (5) assistance and cooperation with various local and Federal agencies interested in law enforcement.

█ The court below entered a summary judgment denying an exemption to Better Business Bureau on the ground it was not organized and operated exclusively for educational purposes. We believe this judgment should be affirmed. Educational programs like that of Better Business Bureau are often of great benefit to the community. But there is no doubt that at least one of the reasons they are carried on by businessmen is that the establishment of better buyer and seller relationship and the elimination of unethical practices are to the long run commercial profit of the business men who subscribe to them. Such educational campaigns are becoming part of the regular business activities of every industry.

Trade associations and chambers of commerce, both local and national, carry them on for mixed commercial and benevolent motives.[2] The difference between a program of adult education carried on by a university and one carried on by a business league cannot be expressed by abstract definition of the educational program of each. The subject matter of the two educational programs may be the same. Nevertheless, there is a difference and it arises out of the underlying commercial motive of a business league and the absence of commercial motive in a university.

Business leagues, chambers of commerce and the like, are omitted from the list of organizations exempt from social security taxes. That this omission is intentional is shown by the fact that such organizations are expressly included among the exemptions given in Section 101 of the Revenue Act.[3] Moreover, in 1939 an amendment was made to the Social Security Act adding new exemptions.[4] It provided that service performed by those in the employ of organizations exempt under Section 101 of the Revenue Act should also be exempt under the Social Security Act *if the remuneration for such service does not exceed $45.00.* By necessary implication this means that for employees whose remuneration exceeds that sum business leagues are not exempt from social security taxation.

And finally we are supported in our conclusion by the interpretation put upon the Social Security Act exemption by the Treasury in its regulations made pursuant to the terms of that Act.[5] The Treasury defines an exempt educational organization as one designed primarily for the improvement or development of the capabili-

---

[2] See Memphis Chamber of Commerce v. City of Memphis, 1921, 144 Tenn. 291, 232 S.W. 73.

[3] The record discloses that appellant, Better Business Bureau, has been exempted from Federal Income Tax under Section 101(7) which exempts the following organizations: "Business leagues, chambers of commerce, real-estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual; * * * ." Revenue Act of 1936, 49 Stat. 1648 (1936), 26 U.S.C.A. Int.Rev.Code, § 101(7).

[4] 53 Stat. 1360 (1939), 42 U.S.C.A. § 302.

[5] "These regulations were prepared by the Department charged with the duty of enforcing the Acts. * * * It is the settled rule that the practical interpretation of an ambiguous or doubtful statute that has been acted upon by officials charged with its administration will not be disturbed except for weighty reasons." Brewster v. Gage, 1930, 280 U.S. 327, 336, 50 S.Ct. 115, 117, 74 L.Ed. 457; White v. Winchester Country Club, 1942, 315 U.S. 32, 41, 62 S.Ct. 425, 86 L.Ed. 619; 1 Mertens, Law of Federal Income Taxation (1942), § 3.20.

ties of the individual.[6] This applies to such an organization as a university. It does not describe Better Business Bureau. The Treasury regulation goes on to state that "under exceptional circumstances" an educational institution is exempt "whose sole purpose is the instruction of the public," or "whose primary purpose is to give lectures on subjects useful to the individual and beneficial to the community, even though an association of either class has incidental amusement features". Better Business Bureau comes neither within the Treasury definition nor its exception.[7] It certainly has other purposes than lecturing and instruction to the public, and there are no exceptional circumstances about its activities. Indeed, to exempt Better Business Bureau would be to exempt nearly every trade association and chamber of commerce which is engaged in similar activities. And thus we would read back into the Social Security Act an exemption of business leagues which was omitted by Congress.

The Circuit Court of Appeals for the Tenth Circuit has reached a conclusion contrary to ours, one judge dissenting.[8] The Municipal Court of Appeals for the District of Columbia has followed the principles outlined here.[9] In the absence of controlling authority we think this court should follow the Treasury interpretation of the Act. That interpretation is entitled to great weight and should not be set aside except for compelling reasons.[10]

The suggestion that Better Business Bureau is exempt as a corporation organized exclusively for charitable purposes would scarcely deserve consideration were it not for our decision in International Reform Federation v. District Unemployment Comp. Bd.[11] In that case, with one judge dissenting, this court exempted from the District of Columbia unemployment compensation tax an organization interested in improving the morals of the community and in lobbying for sumptuary legislation on the ground that these purposes were charitable. While this is a broad interpretation of the term "charitable",[12] it cannot apply to the case before us for two reasons. In the first place, International Reform Federation had no conceivable business purpose; the reforms which it promoted had nothing to do with the buying and selling of goods. Even if reform be considered charity Better Business Bureau is not organized for that exclusive purpose. In the second place, the Treasury regulation[13] interpreting the Social Security Act, which we feel bound to follow, limits the scope of charitable activities to those whose purpose is the relief of the poor.

Affirmed.

GRONER, C. J., concurs in the result.

---

[6] Regulation 91, Bureau of Int.Rev., 1 Fed.Reg. 1764 (1936).

[7] Cf. Consumers' Research, Inc. v. Evans, 1942, 128 N.J.L. 95, 24 A.2d 390, 392: "Moreover it does not seem to us that the prosecutor is engaged exclusively in scientific and educational work as contemplated by the words of the Statute. Its charter does not so limit it. It is not enough that the work be scientific and educational, as doubtless in a broad sense this work was but it must be devoted exclusively to such objects."

[8] Jones v. Better Business Bureau of Oklahoma City, Inc., 10 Cir., 1941, 123 F.2d 767.

[9] Better Business Bureau of Washington, D.C., Inc., v. District Unemployment Compensation Board, D.C.Mun.App.D.C., 1943, 34 A.2d 614.

[10] See supra note 5.

[11] 1942, 76 U.S.App.D.C. 282, 131 F.2d 337.

[12] Cf. National Rifle Ass'n of America v. Young, 1943, 77 U.S.App.D.C. 290, 134 F.2d 524.

[13] Supra note 6.