Opinion filed February 2, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed February 2, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-04-00303-CV 

                                                    __________

 

                                         RICK MARTIN, Appellant

 

                                                             V.

 

                    ABILENE
REGIONAL MEDICAL CENTER, Appellee

 



 

                                         On
Appeal from the 104th District Court

 

                                                          Taylor
County, Texas

 

                                                 Trial
Court Cause No. 23,197-B

 



 

                                              M
E M O R A N D U M   O P I N I O N

 








This is a medical malpractice action.  Rick Martin sued Abilene Regional Medical
Center, Dr. Gorman Thorp, and Cardiology Consultants of Texas (Dr. Thorp=s practice group) regarding
complications he experienced following cardiac catheterization and stent
placement.  Martin served expert reports
which he contends are sufficient to satisfy the requirements of Tex. Civ. Prac. & Rem. Code Ann. ' 74.351 (Vernon Supp. 2005).  Abilene Regional objected to the sufficiency
of those reports.  The trial court
granted Abilene Regional=s
objection and dismissed Martin=s
claims against it with prejudice.  Martin
filed an interlocutory appeal challenging the dismissal.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 51.014(a)(10) (Vernon Supp. 2005). We
reverse and remand.  

                                                               Background
Facts

Martin was admitted to Abilene Regional under the
care of Dr. Thorp for a cardiac catheterization procedure involving the
placement of a stent in his coronary artery. 
The procedure was successfully completed, and Martin was discharged from
the hospital.  Martin received Plavix, an
antiplatelet medication, while in the hospital; but he was not given a
prescription for Plavix when discharged. 
Martin=s
coronary artery stent occluded ten days following his discharge, and he was
readmitted for further cardiac procedures.

Martin contends that Dr. Thorp was negligent in
failing to provide him with a prescription for Plavix when discharged.  Martin=s
claims against Abilene Regional are related to the omission of a prescription
for Plavix.  Francis Breisch, RN, a nurse
employed by Abilene Regional, reviewed Martin=s
discharge instructions with him.  The
discharge instructions included 
information concerning Plavix. 
Even though Martin=s
discharge documentation included information about a drug which was not
prescribed for Martin, Nurse Breisch did not tell Dr. Thorp or any of Martin=s other healthcare providers that
Martin did not have a prescription for Plavix at discharge.  Martin contends that Abilene Regional was
negligent as a result of Nurse Breisch not seeking clarification of the
discharge orders or not informing Dr. Thorp of the lack of a prescription for
Plavix.

                                                     Issues
Presented

Martin presents four issues challenging the
dismissal of his claims against Abilene Regional and the refusal to grant him a
thirty-day extension to serve additional expert reports.  Abilene Regional contends, and Martin
concedes, that both decisions are subject to an abuse of discretion standard of
review.  We will, therefore, review the
trial court=s
decisions under that standard.[1]

                                             The
Adequacy of Martin=s
Expert Reports








Martin=s
second, third, and fourth issues challenge the trial court=s holding that his expert reports were
inadequate.   In its order granting
Abilene Regional=s motion
to dismiss, the trial court found that A[Martin=s] expert reports fail to address the
causal relationship between the alleged breach of Abilene Regional Medical
Center and [Martin=s]
alleged injuries.@  This finding by the trial court is the
principal issue to be resolved in this appeal.

Medical malpractice actions filed after September
1, 2003, are governed by the Texas Medical Liability Act,[2]
Chapter 74 of the Texas Civil Practice and Remedies Code (the Act).  Section 74.351(a) requires claimants, not
later than the 120th day after the date the claim is filed, to serve on each
party or the party=s
attorney expert reports and curriculum vitaes for each expert listed in the
reports.  A claimant=s reports must address each party
against whom a claim is asserted and must provide a fair summary of the expert=s opinions regarding the applicable
standard of care, the manner in which the defendant=s
conduct violated that standard, and the causal relationship between that
failure and the injury, harm, or damages claimed.  See Section 74.351(r)(6).  Defendants have twenty-one days after service
of the reports to file any objections to the sufficiency of the reports.  See Section 74.351(a).  Trial courts are instructed that they Ashall grant a motion challenging the adequacy
of an expert report only if it appears to the court, after hearing, that the
report does not represent an objective good faith effort to comply with [the
Act].@  See Section 74.351(l).

                                                      Scope
and Standard of Review

Section 74.351(l)=s
requirement that trial courts hold a hearing and employ an objective good faith
standard suggests a fact-finding exercise. 
However, no evidence may be introduced at the hearing, and the trial court
is limited to a review of the reports themselves.  See American Transitional Care Centers of
Texas, Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001)(the only
information relevant to the inquiry is within the four corners of the
document).  Martin alleges that the trial
court abused its discretion when it sustained Abilene Regional=s objection to the sufficiency of his
reports because the reports contained all of the elements required by the
statute.  A trial court abuses its
discretion if it acts in an arbitrary or unreasonable manner without reference
to any guiding rules or principles.   Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241‑42 (Tex.
1985).  A reviewing court is not allowed
to substitute its judgment for that of the trial court when reviewing a
discretionary decision.  Flores v.
Fourth Court of Appeals, 777 S.W.2d 38, 41-42 (Tex. 1989).








                                                       Expert
Report Requirements

In Palacios, the Texas Supreme Court
outlined the following criteria for evaluating the sufficiency of expert
reports: 

[T]he
expert report must represent only a good‑faith effort to provide a fair
summary of the expert=s
opinions.  A report need not marshal all
the plaintiff=s proof,
but it must include the expert=s
opinion on each of the elements identified in the statute. In setting out the
expert=s
opinions on each of those elements, the report must provide enough information
to fulfill two purposes if it is to constitute a good‑faith effort.  First, the report must inform the defendant
of the specific conduct the plaintiff has called into question.  Second, and equally important, the report
must provide a basis for the trial court to conclude that the claims have
merit.

 

A report that merely states the expert=s conclusions about the standard of
care, breach, and causation does not fulfill these two purposes.  Nor can a report meet these purposes and thus
constitute a good‑faith effort if it omits any of the statutory
requirements.   However, to avoid
dismissal, a plaintiff need not present evidence in the report as if it were
actually litigating the merits.  The
report can be informal in that the information in the report does not have to
meet the same requirements as the evidence offered in a summary‑judgment
proceeding or at trial.  (citations
omitted)

 

Palacios, 46 S.W.3d at 878-79.  Courts have identified additional
considerations when multiple defendants are sued.  An expert report pertaining to multiple
defendants must provide an explanation of how each defendant specifically
breached the applicable standard of care and how that breach caused or
contributed to the cause of injury.   Taylor
v. Christus Spohn Health Sys. Corp., 169 S.W.2d 241, 244 (Tex. App.CCorpus Christi 2004, no pet.).  

                                                                 Martin=s Reports

Martin served reports from Nurse Ruthie Robinson
and Dr. David A. Garza in order to comply with the Act=s
expert report requirements.  Section
74.351(i) allowed Martin to utilize separate expert reports to satisfy the Act=s requirements for advising Abilene
Regional of the standard of care for Nurse Breisch, the manner in which Nurse
Breisch failed to meet the standard of care, and the causal relationship
between that failure and the injury to Martin:








(i) Notwithstanding any other provision of this
section, a claimant may satisfy any 
requirement of this section for serving an expert report by serving
reports of separate experts regarding different physicians or  health care providers or regarding different
issues arising from the conduct of a physician or health care provider,
such as issues of liability and causation. 
Nothing in this section shall be construed to mean that a single
expert must address all liability and causation issues with respect to all
physicians or health care providers or with respect to both liability and
causation issues for a physician or health care provider.  (emphasis added)

 

The sole alleged issue of negligence on the part
of Dr. Thorp was his failure to discharge appellant with a prescription for
Plavix.  Martin=s
expert, Dr. Garza, was board certified in internal medicine and cardiovascular
medicine.  In his report, Dr. Garza
outlined the standard of care applicable to Dr. Thorp, how Dr. Thorp allegedly
breached the standard of care, and how that breach injured appellant:

THE
STANDARD OF CARE

 

As a
practicing cardiologist, I am familiar with the standard of care for therapy of
patients after stent placement by reasonable and prudent cardiologists.  I perform interventions in my practice and
follow patients after their procedures on a regular basis.

 

The
standard of care of a reasonable and prudent cardiologist in this case requires
the discharge of the patient on Plavix therapy to prevent thrombus formation on
a recently placed intracoronary artery stent. 

 

THE
STANDARD OF CARE AND CAUSATION

 

Dr.
Thorp failed in his duty to provide ordinary and prudent care for Mr. Martin
when he failed to ensure that Mr. Martin was discharged on Plavix therapy.  Without such therapy, an acute or subacute
stent thrombosis is a foreseeable event. 
The failure to provide Mr. Martin with Plavix therapy was a direct and
proximate cause of the acute stent thrombosis.

 

Martin=s
nursing expert, Nurse Robinson, set forth the standard of care that Abilene
Regional=s Nurse
Breisch should have followed and how Nurse Breisch breached that standard:

The
standard of care for the discharge of a patient following cardiac
catheterization with stent placement requires that the patient receive Plavix
for a minimum of 14 to 30 days.  The
nurse must at all times act as the patient advocate.  The nurse, acting as a patient
advocate, must assure that appropriate and timely instructions are provided
to the patient. 

 








Specifically,
in this case, the nurse should have questioned Dr. Crumbliss and Dr. Thorp
regarding appropriate discharge instructions including a prescription for
Plavix for Mr. Martin.  (emphasis added)

 

Nurse Robinson pointed out that Section 217.11 of
the Nursing Practice Act for the State of Texas requires a nurse to Aclarify any order or treatment regimen
that the nurse has reason to believe is inaccurate.@  See 22 Tex. Admin. Code ' 217.11(N) (West 2004)(Tex. Bd. Nurse
Examiners, Standards of Nursing Practice). 
Under the heading ACausal
Relationships,@ Nurse
Robinson explained that the purpose of the stent placement in appellant was to
open a narrowed coronary artery to reestablish adequate blood flow to the
myocardial tissue.  Nurse Robinson then
stated the following:

Without
adequate blood flow, the myocardial tissue will die and a myocardial infarction
(heart attack) will result.  Plavix is
routinely used to minimize the possibility of stent reocclusion.  Plavix prevents platelets from sticking
together and prevents the formation of blood clots.  As printed in Abilene Regional Medical Center=s discharge instructions for patients
after stent placement, APlavix
helps coat the platelets so they do not cling to the stent and clot it off.@ 
Mr. Martin did not receive Plavix and returned to Abilene Regional
Medical Center on January 19, 2002 with reocclusion of his stent and a
myocardial infarction.

 

Both parties agree that Nurse Robinson was not
qualified to address causation in this case with regard to the failure to
prescribe Plavix causing Martin=s
subsequent stent reocclusion.   See
Costello v. Christus Santa Rosa Health Care Corp., 141 S.W.3d 245, 248
(Tex. App.C San
Antonio 2004, no pet.)(holding that registered nurse was not qualified to
express expert opinion as to cause of patient=s
death).  Abilene Regional argues that,
since Dr. Garza was Martin=s
only expert qualified to address causation, Martin=s
reports are deficient regarding causation on the part of Abilene Regional
because Dr. Garza only addressed Dr. Thorp=s
negligence in failing to prescribe Plavix and how that failure caused Martin=s stent reocclusion.  To the extent that the trial court may have
reviewed Dr. Garza=s report
in isolation, the trial court abused its discretion because Section 74.351(i)
expressly provides that a claimant may satisfy any requirement of the Act by
providing reports of separate experts. 








 Dr. Garza
contends in his report that Dr. Thorp should have given Martin a prescription
for Plavix at discharge and that the failure to do so caused Martin=s stent reocclusion.  Nurse Robinson asserts in her report that
Nurse Breisch should have reported the absence of the prescription for Plavix
to Dr. Thorp.  When the reports of Nurse
Robinson and Dr. Thorp are read together, they allege that, if Nurse Breisch had
informed Dr. Thorp of the lack of a prescription for Plavix at the time of
Martin=s
discharge, Dr. Thorp should have prescribed Plavix when notified of the omitted
prescription.   This allegation
constitutes Aa good‑faith
effort to provide a fair summary@
of the causal relationship between Abilene Regional=s
actions and the injury claimed by Martin. 
Palacios, 46 S.W.3d at 878-79. 

Abilene Regional essentially contends that Martin=s reports are deficient because they do
not state that Dr. Thorp would have prescribed Plavix had Nurse Breisch
informed him of an omitted prescription. 
We disagree with this contention. 
The court in Tovar v. Methodist Healthcare Sys. of San Antonio, Ltd.,
L.L.P., No. 04-05-00054-CV, 2005 WL 3079074 (Tex. App.CSan Antonio Nov. 16, 2005, no pet. h.),
reviewed an expert report filed in support of a similar claim.  The claimant in Tovar asserted that
the  hospital=s
nurses were negligent in failing to inform the treating physicians of changes
in the patient=s
clinical status.  Tovar,  2005 WL 3079074, at *2.  The court noted that the expert made the
following allegation in his report regarding causation on the part of the
hospital and its nurses:

Dr.
Fischer states that if the nurses had Acarefully
inform[ed] the treating physicians of changes in the patient=s clinical status . . . [the] type of
lesion harbored by Ms. Rodriguez . . . [should have resulted in] prompt
cessation of the Coumadin, an immediate brain CT scan, immediate institution of
fresh frozen plasma to reverse the Coumadin, and obtaining neurological and
neurosurgical consultation on a stat basis . . . [then] . . . [w]ithin
reasonable medical probability, the dramatic neurological deterioration and
death of Ms. Rodriguez would have been averted.@  (emphasis added)

 

Tovar,  2005 WL
3079074, at *4 The court in Tovar overturned the trial court=s 
order of dismissal even though the expert report only addressed what the
treating physician should have done upon being notified of a medical
condition by a nurse as opposed to what the treating physician would
have done had he or she been properly notified.

                                                                     Conclusion

The trial court abused its discretion by not
reading the reports of Nurse Robinson and Dr. Garza together to conclude that
Martin=s reports
provided a fair summary of the experts=
opinions regarding the causal relationship between Abilene Regional=s actions and the stent
reocclusion.  Martin=s second, third, and fourth issues are
sustained.  As a result of our holding,
we do not  consider Martin=s first issue.

                                                               This
Court=s Ruling

The judgment of the trial court is reversed and
remanded.

 

 

RICK STRANGE

JUSTICE

 

February 2, 2006

Panel
consists of: Wright, C.J., and

McCall,
J., and, Strange, J.











     [1]Accord
Kendrick v. Garcia, 171 S.W.3d 698 (Tex. App.CEastland
2005, pet. filed)(noting changes to the language of the Texas Medical Liability
Act when Tex. Rev. Civ. Stat. art.
4590i (2001) was codified but continuing to apply an abuse of discretion review
absent contrary authority). 





     [2]Tex. Civ. Prac. & Rem. Code Ann. '' 74.001-.501 (Vernon 2005 & Supp. 2005).