EL QUEENO DISTRIBUTING COMPANY AND ANOTHER
v. VICTOR CHRISTGAU.[1]

February 1, 1946.

No. 34,105.

[1]Reported in 21 N. W. (2d) 601.

198

*Brill, Maslon, Grossman & Brill,* for relators.

*J. A. A. Burnquist,* Attorney General, and *K. D. Stalland,* Assistant Attorney General, for respondent.

THOMAS GALLAGHER, JUSTICE.

*Certiorari* to review an order of the director of the division of employment and security sustaining the action of the division and its referee in assigning to relators the standard rate of 2.7 percent for unemployment contributions for the year 1944.

Relators contend that under Minn. St. 1941, § 268.04, subds. 9 and 10 (Mason St. 1941 Supp. § 4337-22H and I), they are entitled to a contribution rate of two percent for the year 1944, the rate assigned their predecessor, the *Goldenberg Company,* a copartnership, based upon its employment experience record.

The relevant portions of the foregoing sections upon which relators rely are as follows:

§ 268.04. **Definitions.** Subd. 9. " 'Employing unit' means any individual or type of organization, including any partnership, association, trust, estate, joint-stock company, insurance company, or corporation, whether domestic or foreign, or the receiver, trustee, or successor thereof, or the legal representative of a deceased per-

son, which has, or subsequent to January 1, 1936, had in its employ one or more individuals performing services for it. *All individuals performing services within this state for any employing unit which maintains two or more separate establishments within this state shall be deemed to be employed by a single employing unit for all the purposes of sections 268.03 to 268.24.*" (Italics supplied.)

§ 268.04, subd. 10. " 'Employer' means:

\* · \* \* \* \*

"(4) *Any employing unit which, together with one or more other employing units, is owned or controlled* (by legally enforceable means or otherwise) *directly or indirectly by the same interests, or which owns or controls one or more other employing units* (by legally enforceable means or otherwise) *and which, if treated as a single unit with such other employing units or interests or both, would be an employer under clause (1)[2] of this subdivision;*" (Italics supplied.)

Respondent contends that the rate applicable to relators is governed by the provisions of the act set forth under § 268.06, which provides the method for determining rates of single employing units based upon experience and which establishes a starting rate of 2.7 percent for new employing units. He asserts that in particular § 268.06, subd. 7, eliminates the contention of relators that they are entitled to the rate of their predecessor as a single employing unit. Said § 268.06, subd. 7, provides:

"For the purposes of this section, two or more employing units which are parties to or the subject of a merger, consolidation or other form of reorganization effecting a change in legal identity or form, shall be deemed to be a single employing unit if the director finds that

"(1) *Immediately after such change the employing enterprises of the predecessor employing unit or units are continued solely*

---

[2] Clause (1) referred to sets forth the general definition of "employer" under the act.

*through a single employing unit as successor thereto;"* (Italics supplied.)

At all times prior to March 1, 1944, *Goldenberg Company* was a copartnership comprised of the following: J. E. Goldenberg, Harry K. Goldenberg, Elliott Goldenberg, Harold J. Goldenberg, David L. Goldenberg, Kalman S. Goldenberg, and Tessie Goldenberg. Its principal office was in Minneapolis. A branch office dealing in cigars, tobacco, and candy at wholesale was operated at Chisholm under the trade name *El Queeno Distributing Company.* Another branch was operated at Duluth, dealing in the same products, under the trade name *El Queeno Cigar Company.* The partnership also owned all the common stock of *Jasah Holding Company,* a Minnesota corporation, which held title to certain real estate in Chisholm. In 1940, the partnership opened an office in Minneapolis for the operation of a wholesale liquor business under the trade name *Old Peoria Company.* Subsequently, a branch of the liquor business was established at Duluth and operated under the trade name *Goldenberg Brothers.*

The original copartnership, *Goldenberg Company,* has been subject to the Minnesota employment and security act since the effective date thereof. Thereunder it has regularly reported all employes in the various branches and enterprises above referred to, and made contributions to the division's fund based upon the wages paid to all such employes. Prior to March 1, 1944, *Jasah Holding Company* had no employes and was not subject to the act. The copartnership's employment experience entitled it to a contribution rate by the division of two percent for the calendar year 1944.

On March 1, 1944, the assets of the partnership branch at Chisholm, operating under the name *El Queeno Distributing Company,* were transferred to the aforesaid corporation, *Jasah Holding Company,* which issued stock therefor to the partnership. On June 1, 1944, by amendment of its articles, *Jasah Holding Company* changed its name to *El Queeno Distributing Company.* Since March 1, 1944, it has operated the branch business at Chisholm.

At all times subsequent to March 1, 1944, it has employed more than eight persons and has been subject to the provisions of the act.

On June 1, 1944, the copartnership organized the Minnesota corporation, *El Queeno Cigar Company.* The assets of the branch at Duluth which had operated under the trade name *El Queeno Cigar Company* were transferred to said corporation and stock therefor issued to the original copartnership. Subsequent thereto, this corporation operated the branch cigar, tobacco, and candy business at Duluth, employing more than eight employes therein and subject to the provisions of the employment and security act.

The management of the two new corporations continued entirely in control of the copartnership, *Goldenberg Company.* The copartnership continued to operate the wholesale liquor and wine business in Minneapolis and Duluth under the trade names *Old Peoria Company* and *Goldenberg Brothers,* respectively.

Subsequent to the formation of the new corporations, the copartnership and said corporations requested the division to assign to all of them for the year 1944 the two percent experience rating of the original copartnership, contending that they should be regarded as one employing unit and one employer under § 268.04, subds. 9 and 10(4), above set forth. The request was denied. On appeal, at the hearing before the referee of the division, it was stipulated that "for all practical purposes the two corporations and the copartnership are being conducted as one employing unit and one employer." On April 24, 1945, the referee made findings affirming the rates fixed by the division. Thereafter relators appealed to the director. On June 5, 1945, the director sustained the referee's finding and decision.

■ Relators assert that, since under § 268.04, subd. 10, all employing units controlled by the same interests are to be treated as a single unit for the purpose of determining the controlling unit's subjectivity to the act, it must follow that all such units are entitled to the experience rating of the controlling unit. An examination of § 268.04, subd. 10, however, indicates that its purpose is to define the term "employer" in such a manner as to prevent

subject employers from escaping liability for contributions under the act by splitting their organizations into various parts (each into smaller units). It has no reference to the objectives here sought by relators.

Section 268.06, subd. 7, appears to govern the establishment of rates based upon experience or otherwise and the transfer thereof. Therein are the only provisions relating to experience or merit ratings under which an employer may gain a reduction in the tax rate because of stability of employment. Thereunder the experience earned by an employing unit can be transferred to a successor as a result of merger or other form of reorganization only when such merged or consolidated units become thereafter a single employing unit.

It is obvious that here we do not have the merger of several separate employing units continuing to operate thereafter as a single employing unit. Rather, we have the reverse. The original copartnership has split up into several units, two of them corporate and one of them a copartnership. Three separate entities survive this reorganization. Each operates a different business in a different locality. It can scarcely be said that all three have and will continue to have common denominators of stability, assets, liabilities, or prospects—factors no doubt considered by the legislature when it enacted the foregoing section.

Our conclusion finds support in the recent case of Ned's Auto Supply Co. v. Michigan Unemployment Comp. Comm. 313 Mich. 66, 20 N. W. (2d) 813. There, a copartnership operated a retail service station and automotive accessory business under the trade name of Ned's Auto Supply Company, and a wholesale business under the trade name of Merchants Auto Supply Company. Subsequently two corporations were formed. One-third of the assets of the copartnership were transferred to one corporation and two-thirds to the other. The partners held all the stock in both corporations. Each corporation claimed it was entitled to succeed to the experience rating of the copartnership. The state denied the corporations' claims, holding that each corporation was a separate em-

ploying unit and therefore, under provisions of the Michigan act similar to § 268.06, subd. 7, ineligible to succeed to the prior rate. Therein Chief Justice Starr, speaking for the Michigan court, stated (313 Mich. 75, 20 N. W. [2d] 816):

"It appears that immediately after the organization of plaintiff corporations in 1938, the commission determined that 'for purposes of record only' the accounts of the partnership could be combined with those of the successor corporations for the purpose of ascertaining whether or not the corporations were subject employers under section 41 [similar to § 268.04, subd. 10 of the Minnesota law] of the act. On the present appeal plaintiffs argue that this same principle should be followed and that their experience records should be combined with that of the preceding partnership for the purpose of determining their contribution rate for 1942. We cannot agree with this contention, as *the question before us relative to the combining of experience records must be determined under the provisions of section 22 [similar to § 268.06, subd. 7, of the Minnesota law]* above quoted. In other words, the fact that the commission, properly or improperly, allowed a combining of accounts in 1938 for the purpose of holding that plaintiff corporations were 'subject employers' under section 41 of the act is not determinative of the question before us relating to combining experience records of the partnership and successor corporations under section 22, as amended in 1941.

"* * * Under section 22(a) the experience records of the partnership and the succeeding two corporations could be combined for the purpose of determining the rate of contribution for 1942, only if the commission found that one of the following circumstances existed: (1) That plaintiff corporations, as 'an employer,' meaning a single employer, had acquired the organization, trade or business, or substantially all of the assets, and had continued 'substantially all the employing enterprises,' of the predecessor partnership; or (2) *that plaintiff corporations, as successors to the partnership and as a 'single employing unit,' continued substan-*

*tially all the employing enterprises of the partnership;* or (3) that plaintiff corporations, as a 'single employing unit,' continued substantially all the employing enterprises of '2 or more' predecessor employing units.

"It is clear that the two corporations could not qualify as a *single employing unit* under the provisions of said section 22(a) (1), (2), and (3), unless their corporate entities were disregarded. Plaintiffs argue that because the five partners continued as owners of the corporate stock of the two corporations and as directors and officers thereof, the corporate entities should be disregarded and they should be considered as a single employing unit. We cannot agree with this argument, because plaintiff corporations are two separate and distinct legal entities and, therefore, two separate employers. We recognize that the courts have often looked through the veil of corporate structure in order to prevent fraud or injustice. [Cases cited.] However, no question of fraud is involved in the present case, and we find no occasion to disregard the corporate entities of the two plaintiffs. *A single partnership had been split into two separate corporations, and under section 22 quoted above they could not be combined as a 'single' successor employing unit."* (Italics supplied.)

It may be suggested here, as indicated in Cargill, Inc. v. Spaeth, 215 Minn. 540, 10 N. W. (2d) 728, that there is doubt whether a taxpayer may urge the court to disregard a corporate entity created by it and look through the veil of corporate structure to ascertain that the copartnership and the corporate entity are one and the same.

We concede that the language of the various sections involved is not of such clarity as would leave the question here presented free from doubt. We feel that the logic upon which the Michigan decision is based is sound, and, in the absence of all other authority on the question (for cases dealing with other provisions under the statutory section involved, see Lindley v. Murphy, 387 Ill. 506, 56 N. E. [2d] 832; Billett v. Gordon, 389 Ill. 454, 59 N. E. [2d] 812), that the result arrived at is proper and should be followed here,

where the facts and the applicable statutory provisions are so nearly identical. This construction should tend toward establishing stability and result in the equitable application of the provisions of this section as contemplated by the legislature.

2. Counsel for relators, in his oral argument, referred to the stipulation above quoted, to the effect that *"for all practical purposes the two corporations and the copartnership are being conducted as one employing unit and one employer."* This language merely indicates that the members of the copartnership arrived at the conclusion that the two separate entities were to be conducted as one employing unit and one employer, and that they thereafter so conducted them. It does not imply that the director consented to the arrangement insofar as making it the basis for the contribution rate of the various units. The conclusion of the copartnership members would not be binding upon him, nor would it permit him to assign to any of the units involved a rate different from that prescribed by the aforesaid statutory provisions.

The writ is discharged and the order affirmed.

Affirmed.

