**STATE et al. v. RATLIFF.**

No. 9610.

Court of Civil Appeals of Texas. Austin.

Feb. 26, 1947.

Rehearing Denied March 19, 1947.

Grover Sellers, former Atty. Gen. of Texas, of Sulpher Springs, Robert O. Koch, Asst. Atty. Gen., C. H. Messer of Austin, Attorney, Texas Unemployment Compensation Co., and Price Daniel, present Atty. Gen., Robert O. Koch, Asst. Atty. Gen., Joe K. Wells and C. H. Messer, Attys., Texas Unemployment Compensation Commission, both of Austin, for appellant.

Stubbeman, McRae & Sealy, by William B. Neely, all of Midland, for appellee.

HUGHES, Justice.

The State sued appellee, J. C. Ratliff, Jr., for taxes, interest and penalties under the provisions of the Texas Unemployment Compensation Act. Vernon's Ann.Civ.St. art. 5221b—1 et seq.

Trial was to the court upon an agreed statement of facts. From an adverse judgment, the State appeals.

Appellee, as an individual, was engaged in crude oil development to the extent of drilling an oil and gas test well in Howard County. The Comanche Pipe Line Corporation was engaged in transporting crude oil in Pecos and Ward Counties. Appellee owned 92.8% of the stock of such corporation. Appellee and the corporation had offices together in Room 615 of the Petroleum building in Midland, Texas; they each used the same post office box, and had the same telephone number; each employed and used the same accountant. Appellee was president and director of the Comanche Pipe Line Corporation. Except as above stated, the businesses of appellee as an individual and the corporation were conducted separately.

The single question presented for decision is whether or not appellee and the Comanche Pipe Line Corporation can be combined as a single employing unit under the Unemployment Act, as otherwise neither appellee nor the Comanche Pipe Line Corporation would be subject to the taxes provided for in such Act.

The particular provisions of the Unemployment Compensation Act here pertinent are:

" 'Employing unit' means any individual * * * or corporation, whether domestic or foreign * * *." Sub. (e), Art. 5221b—17, Vernon's Ann.Civ.St. "(f) 'Employer' means: -

\* \* \* \* \* \*

"(4) Any employing unit which, together with one or more other employing units, is owned or controlled (by legally enforceable means or otherwise), directly or indirectly by the same interest, or which owns or controls one or more other employing

units (by legally enforceable means or otherwise), and which if treated as a single unit with such other employing unit, would be an employer under Paragraph (1) of this subsection;" (Id.).

In Witherspoon Oil Co. v. State, Tex. Civ.App., 156 S.W.2d 579, 583 (writ of error refused for want of merit), the court held that C. L. Witherspoon and the Witherspoon Oil Company, a corporation, was a single employing unit under the above statutes, and summarized the evidence on this issue as follows: "Appellant and C. L. Witherspoon were engaged in the oil business in 1936. As a single employing unit, they had the required number of persons in their employment to come within the definition of 'employer' as made in Sec. 17 (f) (1). C. L. Witherspoon owned his individual business and a majority of appellant's voting stock; in fact all of appellant's stock was held by the Witherspoon family except two shares out of the total of 250 shares. C. L. Witherspoon was appellant's president, and from the date of its charter in 1917, and prior to June 11, 1937, he owned a majority of the stock of the appellant corporation. Appellant and C. L. Witherspoon operated their business in the same office, in the same building, known as the Witherspoon building. C. L. Witherspoon, Jr., was vice-president. He and all of appellant's other employees performed services for C. L. Witherspoon during 1936 in his individual business. C. L. Witherspoon, Jr., the vice-president, testified that when C. L. Witherspoon, in his individual capacity, had anything that he wanted the vice-president to do for him, he did it."

While the facts here are not identical with those in the Witherspoon case, they bear such close resemblance to each other that the holding there requires a similar holding here.

The Witherspoon case was cited by this court with approval in Fleming Hospital v. Williams, Tex.Civ.App. 169 S.W.2d 241 (writ of error refused for want of merit); in which the court also referred to a North Carolina decision in Unemployment Compensation Commission v. City Ice & Coal Co., 216 N.C. 6, 3 S.E.2d 290, 292, which

construed a statute identical with ours, as follows:

"* * * The test of taxability of related enterprises under this Act is whether the individual enterprises are 'controlled' by the 'same interest.' These are words in common use normally conveying rather distinct and definite thought content. As such they are to be given their plain, natural commonly understood meanings. * * * Corporate control normally is directed by the board of directors but the ultimate control is vested in the stockholders. * * * Hence, the control of a corporation is ordinarily held by that individual or group of individuals having the voting rights of a majority of the stock of the corporation. * * * Accordingly, when that individual or group having such control of a corporation likewise has similar control of one or more affiliated and related corporations * * * these corporations—using the plain, natural, and ordinarily-accepted meanings of the words—are said to be 'controlled by the same interests.' * * * "The view here presented is supported by, and is in keeping with, the general intent of the Unemployment Compensation Act. It regards corporate organization objectively and realistically, unencumbered by fictions of corporate identity, and thus, brushing aside form, deals with substance. 1 Fletcher, Cyclopedia Corporations, Perm. Ed., Sec. 45. It tends to aid a more effective administration of the Act in that the number of small units from which contributions are to be made will be reduced, while the benefits to be derived from the unemployment insurance will be extended to a larger number of individuals."

The Fleming opinion also cited with approval the cases of Maine Unemployment Compensation Commission v. Androscoggin, 137 Me. 154, 16 A.2d 252, and Milrose Co. v. Unemployment Compensation Commission, 126 N.J.L. 441, 19 A.2d 892, which are in harmony with the North Carolina case above quoted from.

The Fleming case and its supporting authorities were approved by this court in James v. Consolidated Steel Corp., Tex.Civ. App., 195 S.W.2d 955 (application for writ of error pending).

While it is not necessary that our opinion herein be based solely upon the fact of ownership of majority of stock in a corporation, and we do not so base it, the tendency of our decisions seems to favor the adoption of the rule that ownership of the majority stock in a corporation is sufficient within itself to constitute indirect control of the corporation within the meaning of the above statutes.

These statutes expressly name as an employing unit a corporation, and also expressly provide that if it is indirectly controlled by the same interests, owning or controlling some other unit, that they shall be treated as a single employing unit, so that the statute contemplates that there may be indirect control of a corporation. Direct control of the corporation is, of course, vested in the board of directors, so that the statute providing for indirect control does not refer to this method of direct control. While there may be other means of indirectly controlling the affairs of a corporation, we know of no better way in which such indirect control could be exercised than by ownership of the majority of its voting stock.

The trial court erred in denying the State recovery, and its judgment is reversed and judgment here rendered for the State for the taxes, interest and penalties sued for.