THE STATE OT TEXAS ET AL V. DALLAS LIQUOR
WAREHOUSE NO. 4 ET AL.

No. A-1870. Decided February 2, 1949.
Rehearing overruled March 9, 1949.
(217 S. W., 2d Series, 614.)

*Price Daniel,* Attorney General, *Robert O. Koch* and *Charles P. Atkinson,* Assistants Attorney General, *Joe K. Wells* and *C. H. Messer*, all of Austin, for petitioners.

The Court of Civil Appeals erred in holding that the respondents, Liquor Warehouses, met condition of one of the statutes which provided that "two or more employing units which are parties to a merger, consolidation or other form of reorganization effecting a change in legal identify shall be deemed to be a single employing unit if the Commission finds that (1) immediately after such change the employing enterprises of the predecessor employing unit or units are continued solely through a single employing unit as successor thereto", and were entitled to the former rate of .5% for the years of 1946 and 1947. White v. State, 197 S. W. (2d) 389; Texas Unemployment Compensation Com. v. Bass, 136 Texas 1, 151 S. W. (2d) 567; James v. Consol. Steel Corp., 195 S. W. (2d) 955.

*Corenbleth & Passman* and *Cecil Corenbleth,* of Dallas, for respondents.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

This cause is a consolidation of four identical suits filed by the State of Texas et al, petitioners, against Dallas Liquor Warehouse No. 4, Dallas Liquor Warehouse No. 3, Dallas Liquor Warehouse No. 1, and Waco Centennial Liquor Stores, respondents. A trial court judgment for petitioners was reversed and rendered for respondents by the Court of Civil Appeals. 213 S. W. (2d) 147.

On January 1, 1946, one Cole owned and operated three liquor stores in Dallas, known as Dallas Warehouse Liquor Store No. 1, No. 3 and No. 4, respectively, two liquor stores in Perry, known as Waco Centennial Liquor Store No. 1 and No. 2, respectively, and a jewelry store at Waco, known as Towne Jewelers.

On that date the Texas Unemployment Compensation Commission (hereinafter called "the Commission") fixed a rate of ½ per cent. on all the payrolls of Cole and his unemployment compensation tax. That rate was based on his favorable benefit

wage ratio for the three years immediately preceding, under the provisions of Art. 5221b—5, V. A. C. S. He paid at that rate on his six businesses for January and February, 1946.

On March 1, 1946, Cole formed four corporations, three to own and operate the three liquor stores at Dallas and to be known as Dallas Liquor Warehouse No. 1, No. 2, and No. 3, respectively, and one to own and operate the two liquor stores at Perry and to be known as Waco Centennial Liquor Store. Thereafter Cole controlled each corporation as its president and majority stockholder, and there was no change in the type of business, management, payroll, method or scope of operations of the five liquor stores. As an individual, Cole continued to own and operate Towne Jewelers at Waco.

Thereupon the Commission determined that these four corporations and Towns Jewelers constituted a single employing unit under Section 17(f) (4), of Art. 5221b, V. A. C. S., so as to make all subjects to a tax, although only one of them had more than 8 employees. At the same time, however, the Commission further determined that these four corporations and Towne Jewelers were not a single employing unit under the provisions of Sec. (c), Art. 5221—5, supra, so as to allow the corporations to succeed to the experience rate of ½ per cent. formerly allowed Cole.

Our question is whether this latter determination is correct, respondents having tendered all taxes due under the ½ per cent. rate.

Sec. 17(f) (4), supra, says an employer is "Any employing unit, which, together with one or more other employing units, is owned or controlled (by legally enforceable means or otherwise), directly or indirectly by the same interest, or which owns or controls one or more other employing units (by legally enforceable means or otherwise), and which if treated as a single unit with such other employing unit, would be an employer" as having eight employees, under (f) (1), of Sec. 17.

■ Under this statute the Commission correctly disregarded the corporate fiction to determine that the four corporations and the jewelry store remained a single employing unit so as to make all of them subject to a tax, although only one of them had as many as 8 employees. That construction "tends to aid a more effective administration of the Act in that the number of small units from which contributions are to be made will be

reduced, while the benefits to be derived from the unemployment insurance will be extended to a larger number of individuals." State et al v. Ratliff (Civ. App.), 200 S. W. (2d) 645 (er. ref.). "It's purpose was to bring under the Act as employers employing units, which, but for its provisions, would not be liable as employer, and thus prevent their escaping tax liability." James v. Consolidated Steel Corporation (Civ. App.), 195 S. W. (2d) 955 er. ref., N. R. E.). And see Fleming Hospital v. Williams (Civ. App.), 169 S. W. (2d) 241 (er. ref., want merit; Washington Oil Corporation v. State, (Civ. App.), 159 S. W. (2d) 517.

Numerous other states have passed an unemployment compensation act like ours. In most of them the "common control" or "affiliate" clause is identical with Sec. 17(f) (4), supra; and their courts have likewise "gone behind the veil" and "pierced the corporate fiction" to determine whether plural corporations were "owned or controlled * * * directly or indirectly by the same interest." For example, in Unemployment Comp. Com. v. City Ice & Coal Co., 216 N. C., 6, 3 S. E. (2d 290, the Supreme Court of North Carolina said, "When the interrelationship existing between or among two or more business enterprises is such that a substantial unification of those enterprises emanting (emanates?) from a common source or fountain-head, the general assembly has declared that, since the separate identity of the enterprise has in large measure been swallowed up in such unification, these affiliated enterprises are to be taxed under this Act not as separate units but as a single employing unit. The view here presented is supported by, and is in keeping with general intent of the Unemployment Compensation Act. It regards corporate organization objectively and realistically, unencumbered by fictions of corporate identity, and thus, brushing aside form, deals with substance." The Supreme Court of Main has said that in writing the "Common Control" clause into the Act in that state the legislature must have "intended to go behind the corporate veil and discover actually. * * * Otherwise, an individual intending to carry on a business of considerable magnitude, requiring the employment of many more than eight, could organize several corporations, each employing less than eight, escape contribution, and deprive many employees of the benefits of the Act." Maine Unemploy. Comp. Com. v. Anroscoggin Junior, Inc., 137 Me. 154, 16 Atl. (2d) 252. Many cases from other jurisdictions dealing with this or a substantially similar clause are discussed in the annotations appearing in 142 A. L. R., 718, and 158 A. L. R., 1237.

Since the corporate fiction was properly disregarded to establish tax liability against all respondents, were they entitled to have it disregarded in order to get the benefit of a favorable compensation rate under the provisions of Art. 5221b—5, (c), (1) to (7)?

■ Subsection (c) 7, of that article, reads: "For the purpose of this Section, two or more employing units which are parties to or the subject of a merger, consolidation, or other form of reorganization effecting a change in legal identity or form, shall be deemed to be a single employing unit if the Commission finds that (i) immediately after such change the employing enterprises of the predecessor employing unit or units are continued solely through a single employing unit as successor thereto; and (ii) immediately after such a change such successor is owned or controlled by substantially the same interests as the predecessor employing unit or units; and (iii) the successor has assumed liability for all contributions reequired of the predecessor employing unit or units; and (iv) the consideration of such two or more employing units as a single employing unit for the purposes of this Section would not be inequitable."

The Court of Civil Appeals held that respondents and Towne Jewelers constitute a singe employing unit and are entitled to the contribution rate earned by their predecessors' three years' experience because they met all the four conditions prescribed by the statute just quoted. Petitioners contend that respondents "cannot satisfy or meet Condition (i);" that is, they assert that after the formation of the four corporation the employing enterprises of Cole as predecessor employing unit were not continued through a single employing unit as successor. They argue that prior to March 1, 1946, Cole, as an individual employing unit, owned and operated six employing enterprises; that when he created the four corporations on March 1, 1946, each of them became a separate entity and therefore a separate and distinct employing unit; that thereby the original individual employing unit was split into several units and five separate legal entities survived.

Respondents contend that since the Commission has treated the enterprises owned and controlled by Cole as a single employing unit to determine tax liability, it would be inequitable and unfair not to treat them as a single employing unit in determining succession to experience rating. In support they cite the opinion of the Supreme Court of Tennessee in Royal Jewelers Company v. Hake, 185 Tenn. 254, 205 S. W. (2d) 963, wherein,

under parallel facts, it is said: "The record discloses that the Commissioner, since the organization of the three corporations, to fix tax liability, has disregarded the corporate entities and levied the tax on the Busch jewelry business as a single unit. Apparently, the complainants have accepted this assessment and paid taxes thereon without protest. Had the Commissioner respected the separate entity of the corporations, McKullock's would escape liability for the tax, because it has less than eight employees and so it is not a liable employer under the act. In fairness, if the three corporations are to be regarded as a single entity to fix tax liability, they are to be regarded as a single entity to succeed to the experience benefits of the parent partnership."

■ The precise question at bar has never been authoritatively determined in Texas, so we must turn to the decisions in other states for the answer. Those construing statutes identical in all material respects with Subsec. (c) 7, supra, are of course the most helpful. Two such decisions are Ned's Auto Supply Co. v. Michigan Unemployment Comp. Com., 313 Mich. 66, 20 N. W. (2d) 813, by the Supreme Court of Michigan, and El Queeno Distributing Co. v. Christgau, 221 Minn. 197, 21 N. W. (2d) 601, by the Supreme Court of Minnesota.

The Michigan Act provided that the experience records of two or more employers could be combined as if they were that of a single employer if the Commission should find "that 2 or more employing units have been parties to or the subject of a merger, consolidation or other form of reorganization effecting a change in legal entity or form, and immediately after such change substantially all the employing enterprises of the predecessor employing units are continued solely through a single employing unit as successor thereto." Michigan Comp. Laws, 1942 Supl., Secs. 8485-62. Five partners, operators of a wholesale and retail automobile service and supply business, formed two corporations, which together took over all the partnership business. Each partner took one fifth the capital stock in each corporation, and "all essential activities of the predecessor partnership, were continued without break or interruption, by the same individuals, at the same places of business, and in exactly the same fashion, as before such change-over." The question was whether these corporations were entitled, under the provisions of the quoted statute, to have their experience record of one year combined with those of the predecessor partnership for previous years to secure a more favorable rate. In support of their claim to the more favorable rate, the corporations made

exactly the same contention that respondents make here; that since their accounts had been combined with those of the predecessor partnership to render them subject to the tax, their experience records should be combined with that of their predecessor to determine their contribution rate. But the Supreme Court of Michigan held that the two corporations could not qualify as a "single employing unit" under the statute above quoted "unless their corporate entities were disregarded", which could not be done because the corporations were two separate and distinct legal entities and, therefore, two separate employers,—"a single partnership had been split into two separate corporations, and under section 22 quoted above they could not be combined as a 'single' successor employing unit." Ned's Auto Supply Co. v. Mich. Unemploy. Comp. Com., supra.[1]

The relevant section of the Minnesota Act, Minn. Stat., sec. 268.06,[2] was formerly identical with our subsection (i), of Sec. (c) 7, supra. Several corporations, formed to take over the business of a partnership, insisted that they remained a "single emeploying unit" and therefore entitled to the experience rate earned by the partnership. But the Supreme Court of that state refused to disregard the corporate entity, under authority of Ned's Auto Supply Co. v. Mich. Enemploy. Comp. Com., supra, in these words: "We feel that the logic upon which the Michigan decision is based is sound, and, in the absence of all authority on the question * * * that the result arrived at is proper and should be followed here, where the facts and the applicable statutory provisions are so nearly identical. This construction should tend toward establishing stability and result in the equitable application of the provisions of this section as contemplated by the legislature." El Queeno Distributing Co. v. Christgau, supra.

Two cases cited in the briefs which hold contrary to the conclusion reached by the Supreme Courts of Michigan and Minnesota, are Packard Clothes, Inc., v. Director of Div. of

---

[1]This decision is rendered more persuasive by the fact that that court had already held that the common-control clause of the Michigan Act, which is identical with our Sec. 17(f) (4), supra, was properly applied to two corporations, despite the corporate fiction, when one individual owned 51 per cent. of the capital stock of one and all the stock of the other, so as to make both liable to the tax, just as our courts have held in State et al v. Ratliff and the other cases cited above. Iron Street Corp. v. Mich. Unemploy. Comp. Com., 305 Mich., 643, 9 N. W., (2d) 874. And the court further held that such application of the Michigan common-control clause was not a denial of due process but was valid, since its purpose was to prevent employers from avoiding the obligations of the Compensation Act by dividing their businesses.

[2]For Amendment, see Minn. Sess. Laws 1947, p. 46.

Employ. Security, 318 Mass. 329, 61 N. E. (2d) 528, by the Supreme Judicial Court of Massachusetts, and Royal Jewelers Co. v. Hake, supra, from which we have already quoted. In the Packard case the individual owner organized two corporations to take over his two businesses, took a majority of the stock in both corporations and continued thereby to control them. However, all of the employees concerned were carried on the rolls of one of these corporations while the other was obviously a dummy, "manifestly", the court said, "no more than an empty shell." Moreover, at the time of this reorganization the Massachusetts Act carried no specific provision authorizing transfer of an experience rating following a reorganization. Although presenting a parallel fact situation, the statute construed and applied in the Hake case, supra, by the Supreme Court of Tennessee, was materially different from the provisions of our (c) 7, supra. It read: "Provided, that in the event of a successorship or merger of employers or employing units, the combined experience of the employers or employing units involved shall be computed as of the first day of the calendar quarter immediately following such merger or successorship to determine a new revenue ratio and rate applicable to said combined or successor employer or employing unit. *For the purpose of this subsection only, an employing unit shall be deemed to be the successor of a former employer if it is shown that such employing unit acquired the organization, trade or business, or substantially all the assets of the former employer.*" (Italics ours.) In view of these differences, we do not regard the Packard and Hake cases as having any controlling force as precedents on the question at bar. On the other hand, the Michigan and Minnesota cases are on all fours with this.

Unemployment compensation legislation has developed in this country within the last fifteen years, hence many phases of it have not been construed. The cases we have discussed appear to be the only ones that have comprehensively considered the issue now before us. It is both important and desirable that our several jurisdictions attain as much uniformity as possible in the construction of this legislation. Therefore, to paraphrase the language of the Supreme Court of Minnesota in El Queeno Distributing Co. v. Christgau, above quoted, we feel that the logic upon which the Michigan and Minnesota decisions are based is sound and, in the absence of other authoritative expressions on the question, that those decisions should be followed here where the facts and the applicable statutory provisions are so nearly identical. So we follow them.

Accordingly, the judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion rendered February 2, 1949.

MR. JUSTICE SMEDLEY, dissenting.

I cannot agree with the opinion of the majority. In my opinion the statute involved herein was correctly construed by the Court of Civil Appeals and its judgment should be affirmed. The construction given similar statutes by the Michigan Court and the Minnesota Court, which the opinion of the majority follows, is narrow and technical and is unfair in its application, while the construction given our statute by the Court of Civil Appeals is reasonable and is fair and just in its application.

Opinion delivered February 2, 1949.

Rehearing overruled March 9, 1949.