RAYMOND PEARSON MOTOR CO. v. TEXAS EMPLOYMENT COMMISSION et al.

RAYMOND PEARSON, Inc. v. TEXAS EMPLOYMENT COMMISSION et al.

No. 10029, 10030.

Court of Civil Appeals of Texas. Austin.

March 12, 1952.

Rehearing Denied April 2, 1952.

Gail Whitcomb, Houston, Critz, Kuykendall, Bauknight & Stevenson by F. L. Kuykendall, all of Austin, for appellant.

Price Daniel, Atty. Gen., J. A. Amis, Jr., Asst. Atty. Gen., by Charles P. Atkinson, Asst. Atty. Gen., Lee Williams, Gen. Counsel Texas Employment Commission, Austin, by C. H. Messer, Austin, Atty. Texas Employment Commission, for appellees.

ARCHER, Chief Justice.

The above styled causes were heard and decided by the trial court upon the same testimony. This was by agreement of the parties since the facts and the law applicable to one suit were also applicable to the other.

Appellant, Raymond Pearson, Inc., brought suit against Texas Employment Commission and its members, in their official capacities, seeking to recover $23,016.09 it had paid to said Commission as unemployment compensation taxes for the calendar years of 1946, 1947, 1948 and the

first six months of 1949. This amount represents the difference between a rate of 2.7% and .5% on the taxable wages of Raymond Pearson, Inc.

Appellant Raymond Pearson Motor Company filed its suit against Texas Employment Commission and the members thereof, in their official capacities, seeking a refund of $13,429.41 in taxes it had paid to Texas Employment Commission. This amount represented the difference between a rate of 2.7% and .5% on the taxable wages paid by Raymond Pearson Motor Company during the years 1946, 1947, 1948 and the first six months of 1949.

It was stipulated that these taxes had been paid by the appellants; that they had timely filed their requests for refunds; that such requests had been refused and that these suits for refunds had been brought within the time provided by law.

On July 11, 1951, by agreement of all parties, the two cases were tried at the same time upon the same evidence, and on July 28, 1951, the court entered a judgment in each case denying each appellant the right to recover the alleged overpayment of taxes. Each appellant excepted to the ruling of the court and gave notice of appeal.

In 1922 Pearson acquired a Ford Agency, and in connection therewith operated a general garage business, which he continued to operate as sole owner until he incorporated this division of his business on January 1, 1946, during all of which times he had more than eight employees, all of whom devoted their time exclusively to this division which was operated as a separate enterprise from any other business owned by Mr. Pearson.

In 1933 Mr. Pearson acquired the Lincoln franchise and the Mercury franchise in 1938. These two franchises were operated as one enterprise and at a place apart from the Ford Division. The Lincoln-Mercury Division had its own manager, as did the Ford Division, and the nature and activities of the two Divisions were separate and distinct. Each of the Divisions kept its own bank accounts, paid its own social security taxes, rendered its own property for tax purposes, and made contracts for utilities and advertising, and had more than eight employees.

Raymond Pearson, as an individual, became subject to the Act under Section 17 (b) (1), and executed a form showing such employment.

On March 30, 1946, the Commission received a notice from Pearson of discontinuation of employment executed on Commission's form. This form showed that Pearson as an employing unit discontinued his employment on December 31, 1945, and that his successors in business were the two corporations. The two corporations together acquired all of the predecessor's properties and assets on January 1, 1946. Raymond Pearson Motor Company executed the Employer's Report of Status which showed the required employment during twenty weeks in 1946, and an account number was assigned. Raymond Pearson, Inc. filed a like form and was also assigned an account number.

The question is: Were the two appellant corporations succeeding to all of the properties and assets of the predecessor employer, Raymond Pearson, entitled to succeed to the merit rating of the predecessor?

We do not believe that they were entitled to succeed to the merit rating of Raymond Pearson, predecessor, employer.

The two corporations did not continue Raymond Pearson's employing enterprise as a single unit, but through two units, and as such, under the statutory succession provision, are not entitled to the tax rate transfer.

In construing Subsection 5(c) (7) of Article 5221b, Vernon's Ann.Civ.St. as it read before its amendment on July 1, 1949, such amendment is not applicable in these cases, the court said in White v. State, Tex.Civ.App.1946, 197 S.W.2d 389, writ ref. n. r. e.: "It is only through this subsection (5(c) (7)) that a changed or reorganized employing unit may succeed to the experience rating of another or predecessor unit." 197 S.W.2d at page 392.

Subsection 5(c) (7), in part, provides: "For the purposes of this Section, *two or more employing units* which are parties to

431

or the subject of a merger, consolidation, or other form of reorganization effecting a change in legal identity or form, shall be deemed to be a single employing unit if the Commission finds that (i) immediately after such change the employing enterprises of the predecessor employing unit or units are continued solely through a single employing unit as successor thereto; and (ii) immediately after such change such successor is owned or controlled by substantially the same interests as the predecessor employing unit or units; and (iii) the successor has assumed liability for all contributions required of the predecessor employing unit or units; and (iv) the consideration of such two or more employing units as a single employing unit for the purposes of this Section would not be inequitable." (Emphasis ours.)

Appellants' contention is that the Ford and Lincoln-Mercury Division, under the facts herein, each constituted a separate employing unit so that when the Ford [Lincoln-Mercury] Division was incorporated it was, under Sec. 5(c) (7), Art. 5221b, a single employing unit through which the predecessor employing unit was continued.

Appellants concede that the Ford and Lincoln-Mercury Divisions would, together, be treated as a single employing unit if necessary to bring their owner within the scope of the Act.

In our opinion appellants' interpretation of the Act is precluded by Sec. 17(e) thereof which provides: "All individuals performing services within this State for any employing unit which maintains two or more separate establishments within this State shall be deemed to be employed by a single employing unit for all purposes of this Act."

If we are correct in holding the Ford and Lincoln-Mercury Divisions together constitute but a single employing unit then this case falls squarely within the decisions of the Supreme Court in State v. Dallas Liquor Warehouse No. 4; 147 Tex. 495, 217 S.W.2d 654, and Texas Unemployment Compensation Commission v. General Engineering Corporation, 147 Tex. 503, 217 S.W. 2d 659.

In each of those cases the court held that a single employing unit which was succeeded by two or more corporations was not succeeded by a single employing unit even though ownership and control of the corporations were the same as the ownership and control of the predecessor single employing unit.

The trial court's judgment is affirmed.

HUGHES, Justice (concurring).

This court has no alternative but to follow the opinion of the Supreme Court in the Liquor Warehouse and General Engineering Corporation cases cited in the opinion of Chief Justice Archer.

I append this opinion with the hope that the Supreme Court, if this case is presented to it, will reconsider its former opinions and join its Associate Justice Smedley who, in dissenting in those cases, branded the construction given the Act as narrow, technical and unfair in its application.

There are three reasons for urging such reconsideration:

1. The construction given the Act by the court in those cases is narrow, technical and unfair in its application.

2. The only reasons given by the court for its decisions in those cases are found in the following quotations from the Dallas Liquor Warehouse case: "Unemployment compensation legislation has developed in this country within the last fifteen years, hence many phases of it have not been construed. The cases we have discussed appear to be the only ones that have comprehensively considered the issue now before us. It is both important and desirable that our several jurisdictions attain as much uniformity as possible in the construction of this legislation. Therefore, to paraphrase the language of the Supreme Court of Minnesota in El Queeno Distributing Co. v. Christgau, above quoted, we feel that the logic upon which the Michigan and Minnesota decisions are based is sound and, in the absence of other authoritative expressions on the question, that those decisions should be followed here, where the facts and the ap-

**432**

plicable statutory provisions are so nearly identical. So we follow them." 217 S. W.2d 654, loc. cit. 658.

There is no logic to be found in the Minnesota case.[1] The decision there was based upon the Michigan case.[2] The "logic" of the Michigan case is, as expressed by the Supreme Court in the Liquor Warehouse case: "But the Supreme Court of Michigan held that the two corporations could not qualify as a 'single employing unit' under the statute above quoted 'unless their corporate entities were disregarded', which could not be done because the corporations were two separate and distinct legal entities and, therefore, two separate employers, * * *." 217 S.W. 2d 654, loc. cit. 657.

I see no "logic" in this statement. Of course a corporation is a separate legal entity but the question presented is: Why, in construing the same Act, should corporate fiction be disregarded in order to *impose taxes* and regarded with inflexible rigidity in order to *deny* a taxpayer the *benefits of the Act?* [3] I find no logical answer to this question in either the Michigan or Texas cases. Our Supreme Court has followed the Michigan Court, solely, it seems to me, for the sake of uniformity. It may be desirable for courts of the various States to construe similar statutes alike but I fail to see the importance of the impact, if any, of Michigan and Minnesota unemployment compensation laws upon the citizens of Texas. In any event, if injustice is to be the price of uniformity, then I say the price is too great.

3. The decision of the Supreme Court in the Liquor Warehouse case became final March 9, 1949. On May 3, 1949, the Legislature, without a dissenting vote, amended the Unemployment Compensation Act so as to avoid, in the future, the harsh results of that case.[4] This amendment should be considered and have weight in interpreting the Act which it amended. 39 Tex.Jur. p. 239, 50 Am.Jur. p. 328.

1. El Queeno Distributing Company v. Christgau, 221 Minn. 197, 21 N.W.2d 601, 604. In this case the court said: "We feel that the logic upon which the Michigan decision is based is sound, and, in the absence of all other authority on the question * * * that the result arrived at is proper and should be followed here, where the facts and the applicable statutory provisions are so nearly identical. This construction should tend toward establishing stability and result in the equitable application of the provisions of this section as contemplated by the legislature." (As quoted by the Supreme Court in the Liquor Warehouse case, 217 S.W.2d 654, loc. cit. 657.)

2. Ned's Auto Supply Co. v. Michigan Unemployment Compensation Commission, 313 Mich. 66, 20 N.W.2d 813.

3. The Supreme Court stated the question: "Since the corporate fiction was properly disregarded to establish tax liability against all respondents, were they entitled to have it disregarded in order to get the benefit of a favorable compensation rate under the provisions of Art. 5221b–5(c) (1) to (7)?" 217 S.W.2d 654, loc. cit. 656.

4. Sec. 5D, Chap. 148, Acts 51st Leg., p. 293; Art. 5221b–5(c) (7).