## ROWAN OIL COMPANY ET AL V. TEXAS EMPLOYMENT COMMISSION ET AL.

No. A-4013. Decided June 17, 1953.
Rehearing overruled December 2, 1953.
(263 S.W. 2d. Series 140)

*Tilley, Hyder & Law, Rice M. Tilley and Elton M. Hyder, Jr.,* all of Fort Worth, for Petitioners.

The Court of Civil Appeals erred in affirming the trial court's judgment for the Texas Employment Commission because petitioners, Oil Companies, establish by stipulation that the decision of the Commission was under the old law and without any evidence that the new companies did not acquire the property of their predecessor until after the amendment to Article 5221b-5 Vernon's statute, that all statutory conditions were met and complied with, and that petitioners were entitled to succession to the rate established by their predecessor. Said Court also erred in holding that petitioners did not acquire a part of the organization, trade or business of their predecessor. Parker v. Schrimsher, 172 S.W. 165; Stanford v. Butler, 142 Texas 692, 181 S.W. 2d 269; Wright v. Tipton, 92 Texas 168, 49 S.W. 629; Federal Crude Oil Co. v. Yount-Lee Oil Co., 122 Texas 21, 52 S. W. 2d 56,57.

*John Ben Shepperd,* Attorney General, *J. A. Amis, Jr., Sam Lane,* Assistants Attorney General, *Lee G. Williams* and *C. H. Messer,* of Austin, for Respondents, Texas Employment Commission.

In a review of an administrative order by the Texas Employment Commission, when petitioners fail to sustain the burden of proof that the administrative decision was illegal, arbitrary, capricious, or not reasonably supported by substantial evidence introduced in the trial court, the Commisison was entitled to judgment under the substantial evidence rule. General Engineering Corp. v. Texas Unemployment Comp. Co., 147 Texas 503,217 S.W. 659; Raymond Pearson Motor Co. v. Texas Employment Com., 247 S. W. 2d 429; United States v. Anderson, 194 U. S. 394,24 Sup. Ct. 716.

MR. JUSTICE WILSON delivered the opinion of the Court.

This is a suit for refund of contributions paid the Texas

Employment Commission under Art. 5221b, V.A.C.S. Because of limitations upon the charter powers of a corporation doing business in Texas, the Rowan Drilling Company was reorganized into Rowan Oil Co. and the Rowan Drilling Company, Inc. There seems to be no dispute that the two new companies will continue substantially the same operations as the old company conducted with the same employees doing the same jobs under the same ownership. The practical effect of the reorganization is to eliminate possible ultra vires acts. The Texas Employment Commission has fixed contribution rates for the new companies greater than the rate of the old Rowan Drilling Company because that body ruled that the new companies are not entitled under the law to the benefit of the experience rating of the old company.

■ We must first determine whether this proceeding is an appeal from an administrative tribunal in which the trial court's function is to test the Commission's ruling by the substantial evidence rule or whether it is an original action to recover an alleged improper levy of taxes in which the trial court should use its ordinary fact-finding procedure.

The two new companies filed a petition in the district court seeking, among other things, a refund of all moneys paid under the new rate.

The trial court treated this case as an appeal from an order of an administrative agency. After hearing evidence it rendered judgment that plaintiffs take nothing because the administrative decision was reasonably supported by substantial evidence. This has been affirmed by the Court of Civil Appeals on this one ground. 253 S.W. 2d 673.

Art. 5221b, V.A.C.S., contains no provision granting an employing unit an appeal from an adverse ruling of the Employment Commission denying a refund.

Prior to the amendment in 1947 of the unemployment compensation statutes (Art. 5221b) by the Fiftieth Legislature (Acts 50th Leg., Ch. 379, p. 769) an employing unit aggrieved by a contribution rate assessed against it by the Employment Commission was given no right by Art. 5221b to resort to the courts. Because the "contributions" are an excise tax, Friedman v. American Surety Co., 137 Texas 149, 151 S.W. 2d 570; State v. Praetorians, 143 Texas 565, 186 S.W. 2d 973, 158 A.L.R. 596, it had the remedy of paying the disputed contribution under

protest and suing to recover under the general statute governing the payment of taxes under protest (Art. 75057b, V.A.C.S). The case of James, State Treasurer, v. Consolidated Steel Corp. Ltd., Tex. Civ. App., Austin, 195 S.W. 2d 955, 960, writ refused, n.r.e., allowed the employing unit to bring an action for recovery even though the request for refund of contributions had not been made to the Commission as required by Art. 5221b, 12(j) as then worded. The court said:

"* * * But the above quoted language of Sub. (j) of Art. 5221b-12 is the only provision we find in said Act relating to any claim which an employing unit might have for recovery of contributions. The method therein prescribed is permissive and not mandatory, and prescribes no procedure for hearing, appeal, or resort to the courts by the aggrieved party who may be dissatisfied with the decision of the Commission. The absence of such provisions is, we think, significant. * * *"

After the James decision, the Fiftieth Legislature amended Art. 5221b-12(j) by inserting subsection j(2) [1] into Section 12.

The general statute governing the payment of taxes under protest is Art. 7057b. It requires, first, that the taxes be paid under protest; and, second, that the suit be filed within ninety days. Thus the 1947 amendment to Art. 5221b made a significant change in the situation of an employing unit in that it was not required to pay the contribution under protest. Instead it had four years ("notwithstanding" the provisions of Art. 7057b) to request a refund and then one year to "commence an action" after the request for refund had been denied.

The 1947 amendment to Art. 5221b did not create a right to an appeal from an order of the administrative agency. It established a procedure by which contributions paid but not legally due could be recovered under Art. 5221b without resort to Art. 7057b. It follows that this suit is an original action permitted by Art. 5221b to recover money paid but not due. As such, it is

---

[1] "When an employing unit has made a payment to the Commission of contributions and/or penalties alleged to be due and has, within four (4) years from the date on which such contributions and/or penalties would have become due had such contributions and/or penalties been legally collectible by the Commission from such employing unit, made application to the Commission for a refund thereof and such application for refund has been denied by the Commission, such employing unit may within one (1) year after the denial of such application for refund commence an action in any Court of competent jurisdiction in Travis County, Texas, against the Commission for a refund of the contributions and/or penalties so paid to the Commission, the provisions of Article 7057 (b), Revised Civil Statutes of Texas of 1925, as amended, to the contrary notwithstanding. Such action shall be de novo; and such recovery, if any, shall be without interest."

in no sense an appeal from an administrative tribunal but is similar to an action brought under Art. 7057b to recover taxes paid under protest. The substantial evidence rule has no application in such an action.

The State moved for judgment on the basis that this proceeding was a "review" of an administrative order and that:

"* * * the burden in cases of review of administrative decisions under the substantial evidence rule imposes a burden on the Plaintiffs to go forward and show that the decision of the Commission was illegal, arbitrary or capricious. There has been no evidence offered of that nature by Plaintiffs in this case. There is, on the other hand, substantial evidence in the record on which the Commission's decision was reasonably based. We, therefore, move for judgment."

The trial court recited in its judgment that:

"After the plaintiffs had presented their evidence and rested their case, the defendants moved for judgment on the ground that plaintiffs had failed to discharge their burden of showing that the administrative decision of the Texas Employment Commission was illegal, arbitrary or capricious; that is, that said administrative decision was not reasonably supported by substantial evidence introduced in the trial court."

The trial court then based its judgment upon its determination of whether or not the order of the Commission was reasonably supported by substantial evidence. The Court of Civil Appeals based its decision squarely on this same ground. We hold this to be error.

■ Petitioners tersely stated the reason for the reorganization in a document filed with the Commission and introduced in evidence from which we quote:

"Rowan Drilling Company (the Delaware corporation) transacted business in Texas and other states from 1934 until October 1, 1948. During this 14 year period, the company provided employment security to Texas citizens in furtherance of the declared public policy of this State, annually contributed to the Unemployment Compensation Fund, and systematically accumulated an account balance and experience rating. During this period, and as an incident to its charter purpose of drilling oil and gas wells on a contract basis, the company acquired oil and gas leases and properties. The operation of an oil company in-

volves one charter purpose. The drilling of wells on a contract basis involves a different charter purpose. Since our Texas statutes limit corporations to the exercise of a single charter purpose as enumerated in Article 1302, and since there are certain prohibitions against corporate ownership of real estate (Article 1359), Rowan Drilling Company was engaging in *ultra vires* corporate activity; and the management of the company therefore deemed it a *requirement of law* that the company be reorganized. Under Article 1302, Rowan could operate either a drilling business or an oil business. It could not do both."

The particular language as then worded of Art. 5221b-5 (c) (7) with which we are concerned is:

"* * * (i) immediately after such change the employing enterprises of the predecessor employing unit or units are continued solely through a single employing unit as successor thereto;***".

In State v. Dallas Liquor Warehouse, 147 Texas 495, 217 S.W. 2d 654, we held that the formation of two corporations out of one old employing unit prevented the carrying forward of the old rate under 5221b-5 (c) (7), V.A.C.S. as then worded. It is obvious that if the law requires one corporation to operate a drilling company and another and separate one to operate an oil producing company and if it is an ultra vires act for either to perform the function of the other, then the two new corporations cannot be a single employing unit under the Dallas Liquor Warehouse case without again falling into the very ultra vires operation the reorganization was designed to prevent.

In 1949 the Legislature considered this problem. Art. 5221b was amended in such a way that if the new corporation "acquires a part of the organization, trade or business" of its predecessor "subsequent to the 30th day of June, 1949", the test becomes:

"* * * and (ii) immediately after such acquisition the successor employing unit continued operation of substantially the same organization, trade or business or part thereof acquired; * * *."

This language differs from the language it replaced in that the operation of a reorganized business need no longer be through a "single employing unit" in order to retain its earned experience rate. Under the wording of the amendment the old operation could be split into two or more separate operations and both be entitled to the old rate if each successor continued

to operate a part of the old business. Apparently the Legislature had in mind the very situation presented at bar. Therefore, we must determine whether either of the new companies acquired a part of the old business after June 30, 1949. If they did, they are entitled to a transfer of the old experience rate.

■ The uncontroverted proof in this case establishes that the transfer of certain New Mexico oil leases did not become final until approved by the U. S. Department of Interior in December 1949. As between the parties, this might be regarded as a transfer upon condition subsequent happening after June 30, 1949. But it did not become a transfer of title until finally approved by the U. S. Department of Interior. In view of the fact that one purpose of Art. 5221b is to prevent unemployment and that the whole structure of the act tends to stabilize employment by rewarding the employer who provides stable employment, we construe the word "acquired" so as to carry out the announced policy of the act. Clearly this policy should give this employer the benefit of its earned rate and by so doing encourage it to provide stable employment. Accordingly we hold that the oil company in acquiring the business of its predecessor acquired a part of it subsequent to June 30, 1949, and is therefore within the amendment and entitled to its refund. There is evidence in the record which would support a finding that the transfer to the drilling company had been completed prior to June 30, 1949. However, there is also testimony that the entire reorganization was contingent upon the federal approval of the assignment of the New Mexico leases. Upon this record we hold that the question of whether the drilling company acquired a part of the predecessor business subsequent to June 30, 1949 is one of fact.

■ We make no comment upon the recently enacted Senate Bill No. 34 except to say that because of Article III, Section 55, Texas Constitution, the Act cannot release any contributions which accrued (i.e. became a fixed liability) before its passage and neither does one session of the Legislature have the power to construe the Acts or declare the intent of a past session. Section 1, Article II, Texas Constitution. Snyder v. Compton, 87 Texas 374, 28 S. W. 1061; Plunknett, *A Concise History of the Common Law,* p. 292-304.

We cannot determine from this record the status of the refund nor how much should be allocated to the oil company. The judgments of the trial court and of the Court of Civil Appeals are reversed and the case is remanded for a full development of the facts.

Associate Justices Griffin and Calvert dissenting.

Opinion delivered June 17, 1953.

MR. JUSTICE CALVERT, joined by Chief Justice Hickman and Justices Brewster and Griffin, dissenting.

On original submission of this cause I filed a memorandum dissent. Further consideration on rehearing leaves me in disagreement in a number of particulars on which I have concluded to express my views at greater length. Accordingly, this opinion will be substituted for my original dissent.

In the first place, I disagree with the majority holding that the case was erroneously tried and decided in the courts below under the substantial evidence rule.

Whatever may be the merits of the substantial evidence rule, it is now deeply implanted in the body of our law governing judicial review of administrative orders and decisions. It has been applied in so many cases and to the decisions of so many administrative agencies that it would be pointless to review all of them. Most recently it was applied in the review of an order of the Board of Water Engineers (Board of Water Engineers v. Colorado River Municipal Water Dist., 152 Texas 77, 254 S.W. 2d 369, 372), and that in spite of a provision in the statute involved that trial should be "de novo" and a legislative injunction that on the trial the court should "determine independently all issues of fact and of law with respect to the validity and reasonableness" of the acts of the Board complained of.

As is pointed out in the majority opinion, prior to amendment of Art. 5221b-12(j), V.A.C.S., by the Fiftieth Legislature there was no provision in the Unemployment Compensation law relating to the recovery of contributions required of and paid by an employer, and so it was held in the James case that the procedure for recovery thereof was governed by the general tax statute, Art. 7057b, V.A.C.S. In the light of the James decision and presumptively with knowledge thereof the Legislature amended Art. 5221B-12 (j) by incorporating therein the provision shown in the footnote to the majority opinion. Under the amendment the procedure required was quite different from procedure under the general tax statute. As is pointed out in the majority opinion, protest was made unnecessary to the right of recovery and the time for filing of suit was extended. The most significant change, however, was that as a prerequisite to the

right to sue the employer was required to seek and obtain an administrative ruling on an application for refund. It was provided that only after this was done could the employer "commence an action."

In order to implement the statutory requirement for an administrative decision which would not be summary and therefore abritrary, the Employment Commission has made provision for full hearing on such applications, and the record in this case reflects that a hearing and a re-hearing were accorded the plaintiffs, with an administrative decision of the fact question basic to the plaintiffs' right of recovery—whether the business of the old corporation was acquired by the two new corporations before or after June 30, 1949. It is in just such procedural situations that this court has held time and again that the substantial evidence rule is applicable. I can find no distinguishing feature in this statute, nor does the majority opinion point to any.

The opinion seems to place some emphasis on the provision that if the Commission denied the application the employer may "commence an action." But this is no distinguishing feature. Art. 6049c, sec. 8, V.A.C.S., provides that any interested person dissatisfied with a ruling or order of the Railroad Commission relating to oil and gas matters shall have the right to "file a suit." That article does not mention the taking of an appeal, but this court has held that trial of such a suit is governed by the substantial evidence rule. Gulf Land Co. v. Atlantic Refining Co., 134 Texas 59, 131 S.W. 2d 73; Trapp v. Shell Oil Co., 145 Texas 323, 198 S.W. 2d 424. The same wording is found in the statute involved in Board of Water Engineers v. Colorado River Municipal Water Dist., supra, and the same holding was made. There is no distinction between "commencing an action" and "filing a suit." The phrases mean the same thing.

Moreover, if the question whether this proceeding was in the nature of an appeal or the institution of a completely independent suit is doubtful, the caption of the Act should dispel that doubt. The caption specifically sets out that the Act provides "Providing for refund of contributions and penalties erroneously paid, *and for an appeal to the courts after payment of contributions alleged to be due.*" This Act amending the unemployment law was passed by the Legislature with full knowledge of judicial use of the substantial evidence rule in reviewing administrative decisions, and if it had intended that the sub-

stantial evidence rule should not be applied in suits arising thereunder it could have so provided.

I also disagree with the majority holding that approval by Federal government of the transfer of the New Mexico leases after June 30, 1949 entitles the new oil Company, as a matter of law, to a full recovery.

This case was tried before the Commission and the trial court and was presented in the Court of Civil Appeals and in this court on one and only one theory; that the entire reorganization of the old company into the two new companies and all consequent transfers of properties were contingent on final approval of the transfer of the New Mexico leases as a matter of law and there was therefore no acquisition by the new companies of any of the property or business of the old company until December, 1949. This was the fact issue decided adversely to the plaintiffs by the Commission, the trial court and the Court of Civil Appeals. It has been rejected also by this court, as is evidenced by the holding that the evidence on the issue is conflicting, creating a fact question to be determined by the trial court on a retrial of the drilling company's suit under rules applicable to the trial of ordinary civil suits. The majority has held, however, that since a "part" (the New Mexico leases) of the part of the old company's business (all of the producing part of the business) was acquired after June 30, 1949, the new oil company is entitled as a matter of law to a full recovery.

The statute (Art. 5221b-5(c)(7), as amended by Acts of the 51st Legislature in 1949), provides: "If, subsequent to the thirtieth day of June, 1949, an employing unit * * * acquires a part of the organization, trade or business of an employer, such acquiring successor employing unit and such predecessor may jointly make written application to the Commission for that compensation experience of such predecessor employer *which is attributable to* the organization, trade or business or *the part thereof acquired* * * *," which application shall be approved by the Commission if it finds that "* * * (IV) in the event of the acquisition of *only a part* of a predecessor employer's organization, trade or business, such acquisition was a part to which a definitely identifiable and segregable part of the predecessor's compensation experience was and is attributable***."

Actually, under the statute, it is not the contribution rate of the old company to which the new company succeeds; rather;

it is the "compensation experience." "Compensation experience" is defined in the statute and is composed of two factors which automatically determine the rate, to wit: (1) the employer's total taxable pay roll for the three preceding years "on which contributions have been paid to the Commission," and (2) wages paid for the same three year period to former employees who have been paid benefits for one full week of unemployment.

Whatever right of succession the oil company has in this case it has only by virtue of the terms of the foregoing statute. Properly interpreted the statute does not mean that if a new company acquires a part of the organization, trade or business of a predecessor employer before June 30, 1949, and another part subsequent to June 30, 1949, the new company will succeed to the compensation experience of the old company attributable to both such parts, as the majority has held. It means simply what it says—that as to any part acquired subsequent to June 30, 1949, the new company shall succeed to such compensation experience of the old company as the Commisison may find is *definitely identifiable and segregable and attributable to the part subsequently acquired.* The only basis, conceivable to me, on which may rest the majority holding that the new oil company is entitled to a recovery as a matter of law, is that the evidence shows conclusively that the final acquisition by the new oil company of the property and business transferred to it prior to June 30, 1949, was contingent on approval of the transfer of the New Mexico leases. But the evidence in this respect is no stronger (actually it is the same) than the evidence that final acquisition by the new drilling company of the property and business transferred to it prior to June 30, 1949, was also contingent on final approval of the transfer of the New Mexico leases, and the majority has said that the evidence on that phase of the case is conflicting.

We cannot say that the New Mexico leases constitute a segregable "part" of the old company's business so as to divorce that "part" of the business from the part transferred to the drilling company—as the majority has done—without saying at the same time that it constitutes a segregable "part" of the part transferred to the oil company. And if this part (the New Mexico leases) is the only part of the new oil company's business that we can say as a matter of law was acquired after June 30, 1949, we are then confronted with the statutory provision that as to that part the new oil company is entitled to succeed to the old company's compensation experience *which is attributable*

*to that part and is definitely identifiable* therewith, rather than to the compensation experience that is attributable to and definitely identifiable with all of the part of the old company's business (all of the oil production business) acquired by the new oil company as the majority has held. Since there is in this record no evidence that "a definitely identifiable and segregable part" of the old company's "compensation experience" (total taxable pay roll for the three year period on which contributions were paid and "benefit wages" for the same period) is attributable to the New Mexico leases, it seems to me that the plaintiff has completely failed to make proof that is essential to any recovery whatever and that it is therefore clearly error to render judgment for the new oil company.

It seems to me that this case should be decided on the same theory on which it has been tried and presented, that is, that the reorganization and transfer of the business and properties of the old company was final before June 30, 1949, or that such reorganization and transfer was wholly contingent on approval of the New Mexico leases and therefore not final until after June 30, 1949. By deciding it on the theory on which it has been tried and presented we will avoid the complications which have been noted above.

I think the case should be decided under the subtsantial evidence rule, and if the majority is of the opinion that the administrative decision is not supported by substantial evidence the judgments of the courts below should be reversed and judgment here rendered for all plaintiffs. Personally, I feel that the administrative decision is supported by substantial evidence and that the judgment of the Court of Civil Appeals should be affirmed. Evidence which I deem to be substantial and which supports the judgments below may be summarized briefly as follows: (1) The plan of reorganization as stated in a report made to the Commission provided for a transfer of all assets and liabilities of the old company to the two new companies effective at 7 o'clock a.m., October 1, 1948. (2) All transfers and conveyances to the new companies are absolute on their face and are dated October 1, 1948. (3) The permit of the old company to do business in Texas was surrendered on October 1, 1948. (4) Letters from the Secretary-Treasurer of the old company and of the new drilling company to the Texas Employment Commission, dated September 28, 1948, stated that the reorganization was effective October 1, 1948, and inquired what the new rate of contribution would be for each of the new companies.

(5) In an application for review and redetermination of contribution rate filed by the drilling company with the New Mexico Commission in January 1949 it was stated that "reorganization was accomplished on October 1, 1948." If the reorganization was not complete at the time of this application, there was no basis for the application. (6) After October 1, 1948, old company transacted no business in Texas, all business being transacted by two new companies. (7) All income for last three months of 1948 and for 1949 was reported as income of new companies, no income being reported by old company for that period. It is not to be denied that there is also strong evidence that the reorganization and all transfers and conveyances made pursuant thereto were contingent on final approval of transfer of the Federal leases which did not occur until December, 1949, but it is not the duty of the courts to determine which evidence preponderates; it is their duty only to see if the administrative decision is reasonably supported by substantial evidence. Hawkins v. Texas Co., 146 Texas 511, 209 S.W. 2d 338, 340.

Even if the majority is correct in refusing to decide this case under the substantial evidence rule, the judgments of the courts below should be reversed in their entirety so that the trial court may try the critical issue—whether the reorganization and ensuing transfers and conveyances of parts of the business of the old company to the two new companies was contingent on final approval of transfer of the New Mexico leases. If the trier of the facts finds that they were contingent the plaintiffs would be entitled to succeed to the old company's compensation experience and to a refund of the taxes paid in excess of the legal rate based thereon. If the trier of the facts found that these matters were not so contingent then the plaintiffs would no be entitled to a recovery.

Opinion delivered December 2, 1953.