## ROWAN OIL CO. et al. v. TEXAS EMPLOYMENT COMMISSION et al.

### No. 10070.

Court of Civil Appeals of Texas. Austin.

Dec. 17, 1952.

Rehearing Denied Jan. 7, 1953.

Tilley, Hyder & Law by Elton M. Hyder, Jr., Fort Worth, for appellants.

Price Daniel, Atty. Gen., Chas. P. Atkinson, Asst. Atty. Gen. by J. A. Amis, Jr., Asst. Atty. Gen., Lee G. Williams, Gen. Counsel, Texas Employment Comm. by C. H. Messer, Atty. Texas Employment Commission, Austin, for appellees.

ARCHER, Chief Justice.

Rowan Oil Company and Rowan Drilling Company, Inc., appellants, brought suit against the Texas Employment Commission and its members and the Attorney General of Texas, appellees, seeking to recover for the Rowan Oil Company the sum of $8,104.-35 and for the Rowan Drilling Company, Inc., the sum of $92,101.88, being monies paid to the Texas Employment Commission as unemployment compensation taxes for the calendar years 1948 (beginning with the last quarter in that year) through 1951. These amounts represent the difference between a rate of 2.7% and ½ of 1% on the taxable wages of said companies over said period of time.

On trial before the court without a jury, and after appellants had presented their evidence and rested their case, the court granted a motion of appellees for judgment and accordingly entered judgment for appellees.

This case involves the right of two new corporations (appellants), Rowan Oil Company (hereinafter called New Oil Company) and Rowan Drilling Company, Inc. (hereinafter called New Drilling Company), emerging from a split-up of the (old) Rowan Drilling Company, with the same ownership, proportion of ownership, management, personnel, offices, employment practices, employee benefits, and in every other respect the same, to succeed to the unemployment compensation tax rate of ½ of 1% earned by said predecessor (old) Rowan Drilling Company.

Article 5221b–5(c) (7), Vernon's Ann. Civ.St., is as follows:

"For the purposes of this Section, two or more employing units which are parties to or the subject of a merger, consolidation, or other form of reorganization effecting a change in legal identity or form, shall be deemed to be a single employing unit if the Commission finds that (i) immediately after such change the employing enterprises

of the predecessor employing unit or units are continued solely through a single employing unit as successor thereto; and (ii) immediately after such change such successor is owned or controlled by substantially the same interests as the predecessor employing unit or units; and (iii) the successor has assumed liability for all contributions required of the predecessor employing unit or units; and (iv) the consideration of such two or more employing units as a single employing unit for the purposes of this Section would not be inequitable."

The amendment of 1949 of the above statute is as follows:

"If, subsequent to the thirtieth day of June, 1949, an employing unit becomes an employer under the terms of subsection 19(f) (2) of this Act, or acquires a part of the organization, trade or business of an employer, such acquiring successor employing unit and such predecessor employer may jointly make written application to the Commission for that compensation experience of such predecessor employer which is attributable to the organization, trade or business or the part thereof acquired to be treated as compensation experience of such successor employing unit. The Commission shall approve such application if it finds that (i) the joint application was received by the Commission within one hundred eighty (180) days following the date of the acquisition; and (ii) immediately after such acquisition the successor employing unit continued operation of substantially the same organization, trade or business or part thereof acquired; and (iii) the predecessor employer has waived, in writing, all his rights to an experience rating based on the compensation experience attributable to the organization, trade or business or part thereof acquired by the successor employing unit; and (iv) in the event of the acquisition of only a part of a predecessor employer's organization, trade or business, such ac-

quisition was of a part to which a definitely identifiable and segregable part of the predecessor's compensation experience was and is attributable; and (v) if the successor employing unit was not an employer at the time of the acquisition, such successor has elected to become an employer as of the date of the acquisition or has otherwise become an employer during the year in which the acquisition took place."

As stated by appellants the crux of this case primarily is whether the New Companies acquired the business, or part thereof, from Rowan Drilling Company after or subsequent to the 30th day of June, 1949.

The appeal is before this Court on four points, to the effect that the trial court erred in granting the motion for judgment, because the decision of the Commission was under the old law and that since the application was under the amendment, the Commission failed to make findings of facts, and so the trial should be *de novo*, and the substantial evidence rule does not apply; that the amendment provides that the Commission shall approve an application for succession if it finds that applicants satisfied the five conditions provided and because appellants established that the decision was under the old law; that the New Companies did not acquire the properties of their predecessors until after June 30, 1949; and finally that the legislature has negatived the decisions of the courts construing the old statute.

The application filed on July 22, 1949, with the Commission was a report of the reorganization of the two New Companies for succession to the rate earned by the predecessor, Rowan Drilling Company. The form used is entitled Report on Reorganization and its Number is C–48. This form is too long to embody herein. The name of the successor employing unit is given as Rowan Drilling Company, Inc., and is designated as a corporation, and the predecessor is listed as Rowan Drilling Company, No. 00257, and the date of reorganization is 10–1–48. This form is signed and sworn to by B. S. Brants, Secretary-Treasurer.

There is attached to the form a statement of the plan of reorganization of Rowan Drilling Company, predecessor and the successor units, Rowan Drilling Company, Inc., and Rowan Oil Company, and this plan was adopted and put into effect on October 1, 1948. From this statement we take the following:

"Prior to reorganization on October 1, 1948, Rowan Drilling Company was required for Federal income tax purposes to allocate payroll cost between its drilling business and oil business. Since all employees were primarily employees of the drilling business, this allocation was made on the basis of estimated time devoted by them to the oil business. This same situation continues to exist since reorganization. Rowan Drilling Company, Inc. is the employing unit and is the company to which the employees look for their compensation. However, to the extent that such employees perform services properly chargeable to Rowan Oil Company, that company is required to absorb the payroll cost.

"In illustration of the foregoing, it can be pointed out that at the time of reorganization on October 1, 1948, and during the three months immediately following thereafter, Rowan Drilling Company, Inc. had approximately 359 employees, all of whom remained in the employ of Rowan Drilling Company, Inc."

Recitation is made that the Rowan Drilling Company, Inc., was organized December 15, 1947, under the laws of Delaware, authorized to engage principally in the business of contract drilling for oil and gas. On the same date and under the laws of Delaware a new corporation known as Rowan Oil Company, authorized to engage principally in the production of oil and gas properties, was organized.

"The present corporation, Rowan Drilling Company, shall transfer to the New Drilling Company all of the drilling rigs, tools, equipment, and related assets now used by the present corpora-tion in its business of contract drilling, all as more particularly described in the bills of sale and warranty deeds, copies of which are attached hereto as Exhibit 'C', dated October 1, 1948, at 7:00 o'clock a. m., to which reference is specifically made."

In numerous letters and in the extensive briefs, addressed to and filed with the Commission, the entire plan of reorganization of the companies is gone into in detail and throughout such material the date of the reorganization is given as October 1, 1948, and no intimation is given in the first reports that there was a contingency of certain events before the plan was to be complete.

The first letter concerning the reorganization is Plaintiffs' Exhibit No. 31, and is as follows:

"Rowan Drilling Company, Inc.
Commercial Standard Building
Fort Worth 2, Texas
Telephone 2–2393
L.D. 193
September 28, 1948
In re: #00257
"Texas Employment Commission
Austin 19, Texas

Gentlemen:

"This Corporation is a party to a reorganization as of October 1, 1948. In the reorganization, it acquired from Rowan Drilling Company, assets used in the drilling of oil and gas wells and certain other assets incidental thereto, and it assumed certain liabilities of Rowan Drilling Company. Effective October 1, 1948, the drilling operations will be carried on by the new company, Rowan Drilling Company, Inc. We would thank you to assign us a new number, if this is necessary, and would also thank you to advise us if our rate of contribution will remain the same.

Yours very truly,
Rowan Drilling Company, Inc.
By
s/B. S. Brants

B. S. Brants"

The Commission's order of denial of the application is as follows:

"Commission Decision

"Rowan Oil Company and
Rowan Drilling Company, Inc.
Commercial Standard Building
Fort Worth, Texas

"On the 30th day of June, 1950, the Texas Employment Commission considered the application of Rowan Drilling Company, Inc., and Rowan Oil Company to be treated as a single employing unit with their predecessor Rowan Drilling Company under Section 7 of the Texas Unemployment Compensation Act. The Commission, having considered all of the evidence in the case, the law applicable thereto, and the argument of counsel, is of the opinion that the application and each of the three alternative prayers for relief must be denied and they are hereby denied.

"It is hereby determined that neither Rowan Drilling Company, Inc., nor Rowan Oil Company shall be deemed to be a single employing unit with Rowan Drilling Company under Section 7 of the Texas Unemployment Compensation Act.

"This the 30th day of June, 1950.

s/ Harry Benge Crozier
_____

Harry Benge Crozier
Chairman-Executive Director

s/ Dwight Horton,
_____

Dwight Horton, Commissioner

s/ Dean W. Maxwell
_____

Dean W. Maxwell, Commissioner"

Subsequently rehearing was had and the whole plan of organization was again presented to the Commission with extensive briefs in support thereof, and on August 28, 1950, the Commission reaffirmed its original decision in denial of the application.

A. H. Rowan, President of the Rowan Oil Company and Chairman of the. Board of Rowan Drilling Company, Inc., testified as to the formation of the original Rowan Drilling Company in 1924; that it was suc-
ceeded by Rowan Drilling Company, a Delaware corporation, in 1934; that this corporation was dissolved in December, 1949; that two other new companies had theretofore, prior to October 1, 1948, been formed, and as to the cause and need for the creation of the new companies, and in response to questions by Mr. Hyder, testified:

"Q. In the event you could not comply completely with the plan of reorganization submitted and on which you had approval, what would have been your decision in such event? A. We wouldn't have carried it out.

"Q. What would you have done? A. You mean after we started it, if we couldn't have finished it?

"Q. Yes, sir. A. We would have put it back in the old company and continued in the old company.

"Q. Was that possibility discussed at the time? A. Yes, sir.

"Q. Of the reorganization? A. Yes, sir.

"Q. And during the reorganization? A. Yes, sir.

"Q. Was that the understanding between all three companies? A. Yes, sir.

*    *    *    *    *    *

"Q. So that the beginning date of your plans was approximately October 1st, 1948? A. That's right.

"Q. Did you have many leases that had to be transferred, and other properties? A. Yes, we had. I couldn't say how many, but a great number of wildcat leases and some royalty conveyances and then, of course, our productive leases.

"Q. Was there much paper work involved? A. There was a considerable amount of paper work, yes; a big job.

"Q. And, of course, you had to have that beginning date to effectuate the reorganization? A. That's right.

"Q. Were the transfers or assignments from the old company to the two new companies absolute or conditional

on their face, Mr. Rowan? A. * * Absolute."

"*Question by Mr. Williams:*

"Q. Mr. Rowan, isn't it true that on October 1, 1948, the old Rowan Drilling Company forfeited its right to do business in Texas? A. Yes, sir, I think that's right.

"Q. Did you likewise testify that permits to do business in Texas were granted to the two new corporations, the new oil company and the new drilling company, on October 1, 1948? A. I think that's the date—simultaneously, yes, sir.

"Q. Do you recall, Mr. Rowan, that instruments transferring the assets of the old corporation, in so far as they pertain to oil, were executed and dated as of October 1, 1948, at 7:00 o'clock a. m.? A. You are talking about the producing properties now?

"Q. I am talking about the oil assets. A. Yes, sir. The assignments were made out transferring the properties as of 7:00 a. m.—those that we could transfer, yes, sir.

"Q. And the transfer and assignments and sales to the new drilling corporation were, likewise, made on October 1, 1948? A. That's correct.

"Q. Did the old Rowan Drilling Company engage in any business at all in the state of Texas after October 1, 1948? A. No, sir, they didn't."

Hamilton Rogers, a witness called by the plaintiff, testified in detail that he was employed by Rowan Oil Company and Rowan Drilling Company; that he was familiar with the entire transaction concerning the reorganization by the plaintiffs, and that the transfers were made to the new companies on October 1, 1948, or given that date if made later, and in reply to questions by Mr. Williams stated:

"Q. Then, since they are made effective as of the beginning of the day, that is, October 1, 1948, then the intention in the execution of that instrument is an intention to make it effective as of October 1, 1948? A. Only in so far as bona fide purchases dealing with us—in our dealings with the public on this matter. So far as the face of these instruments are concerned, we recognize our obligation to protect the public; we had to protect the oil companies. If there were any innovation in these papers at all which are suggestive of the fact that we might end up in hot water a year or two down the line. We couldn't even have collected on our runs; we'd have to be putting up bonds and everything else.

"Q. In the event, then, that the new oil company had occasion, after a transfer on October 1, 1948, itself to convey some of the properties so transferred on October 1, 1948, would that be a deed from the new oil company to purchaser? A. Yes, it would, if I understand your question right.

"Q. I am simply saying if the new oil company sold some of the properties acquired, it would be a deed absolute from the new oil company? A. Yes, sir, it would."

Texas Unemployment Compensation Commission v. General Engineering Corporation, 147 Tex. 503, 217 S.W.2d 659; Raymond Pearson Motor Co. v. Texas Employment Commission, Tex.Civ.App., 1952, 247 S.W.2d 429, error ref., n. r. e.; Sharfstein v. Texas Employment Commission, Tex.Civ.App.1952, 245 S.W.2d 545, error ref., n. r. e.

The Commission had before it all the facts, circumstances and conditions attendant upon the reorganization, with the records and evidence in support thereof and we believe that the Commission's order of denial is reasonably supported by substantial evidence and that it was not shown upon the trial hereof that such order was not supported by substantial evidence and was illegal, arbitrary, or capricious by the appellants, and the trial court was justified in so holding.

The judgment of the trial court is affirmed.